In re Michael A. AMIGONI, Richard L. Durbin, Debtors.

Bankruptcy Nos. 88 B 10607, 88 B 10608.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 11, 1989.

David A. Mucklow, Chicago, Ill., for debtors.

James E. Hussey, Carponelli, Krug & Lerum, Chicago, Ill., for Avram Freedberg.

Joel R. Nathan, U.S. Atty., Chicago, Ill.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

Richard Durbin and Michael Amigoni (collectively "Debtors") both filed petitions in bankruptcy under Chapter 11 of the Bankruptcy Code. Debtors have each proposed a Plan of reorganization under which certain restitution obligations ordered by the District Court in their respective criminal cases would be paid in full but over a period likely to exceed twelve years. They now seek approval of their respective Disclosure Statements in support of their filed Plans. For reasons set forth below, such approval is denied and their Plans are stricken.

The restitution obligations were imposed on Debtors as part of sentences following their convictions for mail and wire fraud. The impact of their Plans is to modify a condition of each Debtor's federal sentence and parole. That impact was revealed clearly in their respective Plans and in their Disclosure Statements. This court specifically requested that the parties, including the United States Attorney, address the issue of whether as a matter of law a debtor can affect and modify through his plan the payment of restitution ordered by a United States District Court in a criminal case. The parties have now fully briefed and argued this issue. This court con-

cludes that the proposed modification of restitution payments violates the Bankruptcy Code and renders each Plan unconfirmable; disapproval of the Disclosure Statements is therefore required.

## UNDISPUTED FACTS

The relevant underlying facts are undisputed. In 1988, Debtors were operating a business that was engaged in purchasing automobiles in Canada and importing them into the United States. The business struggled. In February 1988 a federal grand jury began investigating allegations that Debtors had misappropriated certain customer deposits and had used these funds to meet other business expenses.

On July 12, 1988 Debtors filed a voluntary petition in bankruptcy under Chapter 13 of the Bankruptcy Code. Debtors converted their petitions to proceedings under Chapter 11 on December 13, 1988.

On December 23, 1988 Debtors were arraigned on charges that they violated 18 U.S.C. § 1341. They subsequently plead guilty to "knowingly, willfully and unlawfully defrauding various customers of money and property by means of false and fraudulent pretenses." On February 7, 1989 Judge Nordberg sentenced Debtors to five years probation. Pursuant to this judgment, Debtors were required to "comply with general conditions of probation" and with the following three "special conditions": (1) pay restitution of approximately $104,000 to their defrauded customers; (2) spend 30 days in custody at the Metropolitan Correctional Center during the last month of probation (after a hearing to be conducted 45 days before the end of probation); and (3) perform 200 hours of community service. Debtors were made jointly and severally liable for the restitution amount. The district court stated that each debtor was required to "use [his] best efforts to pay restitution as directed by the

United States Probation Office." Durbin & Amigoni Sentencing Transcript at 7.

Debtors have proposed essentially identical Plans for reorganization under Chapter 11. The Plans specifically state that "[s]ubject only to the express constraints in the Plan, the Debtor shall be entitled to manage his own affairs without further order of the court and *shall hold all of his interests in property free and clear of all liens, claims and encumbrances of every kind except as otherwise provided in the Plan.*" Durbin Plan Art. IV, ¶ 1; Amigoni Plan Art. IV, ¶ 1 (emphasis added). Under each Plan the restitution obligations are segregated into a separate class, Class 4, and are to be paid in full over the course of the Plan. Under each Plan the debtor will contribute $250 per month for the first two years, but none of this money will go to the defrauded customers until after classes 1–3 have been paid in full.[1] From that point on, $200 per month per Debtor (out of the $250 paid each month) will go to pay the Class 4 Creditors. After 24 months the amount devoted to paying Class 4 Creditors will increase to $350 per month and finally to $400 per month after 48 months.

Debtors propose to make these payments out of their salary and profits earned from their closely held corporation, Atlantic Luxury Rentals, Ltd., which is engaged in the rental of luxury automobiles. Even with the contemplated increase in payments, it would likely take more than 12 years to repay the Class 4 Creditors, assuming *arguendo* that the Plans are feasible.[2] This payment schedule is far more generous to Debtors than that set forth by the United States Probation Office.

Avram Freedberg, a defrauded customer and therefore a Class 4 Creditor, has objected to the Plan on the ground that the 12 year repayment period is "implicitly inconsistent" with the restitution order and the

---

1. Class 1 includes administrative costs provided for under 11 U.S.C. § 503(b), Class 2 includes tax obligations, and Class 3 includes secured claims. Debtors represent that no Class 2 claims are known of or anticipated. The Class 1 claims are anticipated to be about $3,500, and there is one Class 3 claim for $740.

2. Because the instant issue is dealt with prior to hearing on confirmation, the court has not taken evidence to determine feasibility and other issues related to requirements for confirmation under 11 U.S.C. § 1129 that are not decided here.

five year probation period. The United States has also objected to the Plan, arguing that the Plan cannot be confirmed because it does not comply with § 1129 of the Bankruptcy Code, Title 11 U.S.C.

This court has core jurisdiction over this issue under 28 U.S.C. § 157(b)(2)(L).

## DISCUSSION

A federal District Court is authorized under 18 U.S.C. § 3663(a) to order a defendant convicted of certain federal offenses including wire or mail fraud, as part of his or her sentence, to "make restitution to any victim of such offense." The resulting obligation is enforceable by both the United States and the victim(s) of the defendants' misconduct. Id. at § 3663(h). When a defendant who is ordered to make restitution is also placed on probation, the terms imposed by the restitution order are conditions of probation. Id. at § 3663(g). The violation of these conditions can lead to revocation of probation and incarceration. Id.

The District Court is also authorized to order that restitution obligations be paid in installments and to specify the date by which payment(s) must be made, subject to the condition that the date of the final payment cannot be later than the end of the probation period. Id. at § 3663(f)(1) & (f)(2)(A). If that court does not otherwise provide, restitution must be made immediately. Id. at § 3663(f)(3).

■ As previously noted, the District Court ordered each Debtor, as a condition of his 5–year probation, to "use [his] best efforts to pay restitution as directed by the United States Probation Office." Durbin Sentencing Tr. at 7. Section 3663(f)(2)(A) clearly specifies that in these circumstances the maximum time period in which Debtors' restitution obligations can be repaid is 5 years, the length of the probation period.[3]

■ Debtors seek to extend this time period greatly by including the restitution obligations in their Plans of reorganization and providing for repayment over a period that would likely exceed 12 years. Debtors therefore seek to utilize the bankruptcy laws to alter their federal sentences. The authority they rely on, however, does not support their position.

This court is authorized to confirm a plan of reorganization only if certain requirements enumerated in 11 U.S.C. § 1129(a) are met, including the requirement that "the plan complies with the applicable provisions of [title 11]." 11 U.S.C. § 1129(a)(1). As previously discussed, Debtors' Plans each specifically provide that "[s]ubject only to the express constraints in the Plan, the Debtor ... shall hold all of his interests in property free and clear of all liens, claims and encumbrances of every kind except as otherwise provided in the Plan." Durbin Plan Art. IV, ¶ 1; Amigoni Plan Art. IV, ¶ 1. The clear intention of that provision is to restrict the ability of the United States and/or the victims of Debtors' fraud to collect the amounts due under the restitution order to the extended payment schedule set forth in the respective Plans. This Plan provision is inconsistent with the rights granted to a party holding a nondischargeable debt under Title 11, and therefore makes the proposed Plans unconfirmable under 11 U.S.C. § 1129(a)(1).

A confirmed plan generally binds any creditor regardless of whether the creditor's claim is impaired by the plan or whether the creditor accepted the plan. 11 U.S.C. § 1141(a). 2 Robert A. Ginsberg, *Bankruptcy* § 13.14[b] (2nd ed. 1989). Further, subject to certain exceptions, the confirmation of a plan "discharges the debtor from any debt that arose before the

**3.** The United States argues that the restitution obligations were due immediately under 18 U.S.C. § 3663(f)(3) because the court had not specifically ordered a time period or schedule for payment. U.S. Br. at 2. Arguably the District Court in the quoted portion of the text delegated the task of formulating a payment schedule to the United States Probation Office.

Assuming such a delegation is permissible, the schedule formulated by the United States Probation Office would still be subject to the constraint that the period for payment could not exceed the probation period. Under either view of the sentencing order, the Debtors' proposed plans would greatly extend the repayment period beyond that permitted in 18 U.S.C. § 3663(f).

date of confirmation," and leaves the creditors with only those rights afforded them in the plan. 11 U.S.C. § 1141(c) & (d)(1). *See* 2 Ginsberg, *Bankruptcy* § 13.14[b] ("In effect, the order of confirmation substitutes the plan obligations for the debtor's prepetition obligations."). One exception, however, is § 1141(d)(2) which provides that "confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under [11 U.S.C.] § 523." Section 523 in turn provides:

> "[a] discharge under section ... 1141 of this title does not discharge an individual debtor from any debt—

> .  .  .  .  .

> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss.

Debtors have specifically conceded that their restitution obligations are not dischargeable under § 523(a)(7). Debtors' Br. at 4. *See Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (holding that restitution obligations imposed as a condition of probation by a state court

are nondischargeable within § 523(a)(7)). Notwithstanding this concession, Debtors assert that the proposed Plans are confirmable. Their position is that even though the restitution obligations are not dischargeable, because the Plan provides for full payment of those obligations eventually, the Plans are lawful.[4]

Debtors do not properly address the consequences that accompany the determination that a debt is nondischargeable. Although these consequences are not expressly set forth in the Bankruptcy Code, they are readily discernible by implication from 11 U.S.C. § 524 which specifically addresses the "effect of discharge":

> (a) A discharge in a case under this title—

> (1) voids any judgment at any time obtained, to the extent such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section ... 1141 ... of this title ...

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset

---

**4.** As Debtors themselves recognize, the conclusion that a restitution obligation is a "debt" as that term is used in § 1141 is a necessary step in their analysis. The word "debt" is defined in 11 U.S.C. § 101(11) to mean "liability on a claim." A claim in turn is broadly defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* at § 101(4)(A). Congress intended the concepts of "claim" and "debt" to be coextensive. H.Rep. No. 595, 99th Cong., 2d Sess. 310, *reprinted in* U.S.Code Cong. & Admin.News 5787, 6267.

The Supreme Court in *Kelly v. Robinson,* 479 U.S. 36, 50, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986) stated that it had "serious doubts whether Congress intended to make criminal penalties 'debts' within the meaning of § 101(4), but specifically left the issue open." (footnote omitted). Notwithstanding the Supreme Court's discussion, the Third Circuit recently held that restitution obligations were "debts" (and that such debts were dischargeable in Chapter 13). *In re Johnson–Allen,* 871 F.2d 421, 424–428 (3rd Cir.1989) (collecting cases) *cert. granted sub. nom. Pennsylvania Dept. of Public Welfare v.* · *Davenport,* —— U.S. ——, 110 S.Ct. 49, 107

L.Ed.2d 18 (1989). *See also In re Robinson,* 776 F.2d 30 (2nd Cir.1985) *rev'd on other grounds sub nom. Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). The Third Circuit observed that "[t]he only limitation imposed by the language of the Bankruptcy Code is that the obligation must give rise to a 'right to payment.'" 871 F.2d at 425.

One of the concerns at issue in both *Kelly* and *Johnson–Allen* was the inability of the victims under the applicable state law to independently enforce restitution obligations. In contrast to the state restitution laws at issue in *Kelly* and *Johnson–Allen,* the federal law specifically provides that "an order of restitution may be enforced ... by a victim named in the order to receive restitution, in the same manner as a judgment in a civil action." 18 U.S.C. § 3663(h)(2). The argument that the restitution obligations involved in this case are "debts" is therefore stronger than the situations in *Kelly* and *Johnson–Allen* because the victims have a clearer "right to payment" (although it should be noted that the restitution order does not specifically enumerate each of the victims). It is, however, unnecessary to resolve this issue here because even if the restitution obligations are "debts," for reasons set forth below the Debtors' proposed Plans are not confirmable.

any such debt as a personal liability of the debtor....

■ The combined effect of 11 U.S.C. § 1141(d) and § 524 is to void, upon confirmation of the plan, all judgments related to a dischargeable debt and to enjoin future efforts to collect on the debt except as otherwise provided in the plan. *See generally* 1 Ginsberg, *Bankruptcy* § 3.07[b], 11.11. The clear implication is that debts determined not to be dischargeable are not voided upon confirmation, but rather continue to exist outside the plan. Id. at §§ 3.07[c], 11.06[a][1]. The party to whom such a debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy.

This analysis is consistent with *In re Howell*, 84 B.R. 834 (Bankr.M.D.Fla.1988), a precedent on point. In that case judgment had been entered in favor of debtors' bank, ruling that the sum owed the bank was nondischargeable under 11 U.S.C. § 523(a)(6).[5] The debtors later proposed a modified plan of reorganization which provided for monthly payments to the bank until the debt was paid off. The debtors conceded that "their intent in including this provision in the [m]odified [p]lan was to preclude [the bank] from attempting to execute or collect on its nondischargeable judgment debt after the confirmation of the plan." Id. at 835. The bank objected to confirmation of the plan on the ground that it sought to prevent the bank from collecting on its nondischargeable debt. Id.

The *Howell* court explained that under § 1141(a) of the Bankruptcy Code, those parties holding nondischargeable debts identified in § 1141(d)(2) "are expressly excepted from those persons who are bound by the provisions of a confirmed plan.... *Accordingly, there can be no doubt that a creditor who has a debt excepted from discharge under § 523 cannot be bound by the provisions of a confirmed plan.*" Id. at 836 (emphasis added). The court concluded:

> In this case, the provisions in the [m]odified [p]lan by which the [d]ebtors at-

tempt to restrict [the bank's] right to execute or collect on its nondischargeable judgment violate the provisions of the Code and impermissibly impair the benefits provided [the bank] as a creditor with a nondischargeable judgment. Accordingly, the [plan] does not comply with the applicable provisions of the Code as required by § 1129(a)(1) and cannot be confirmed unless or until [the provision] relating to the payment of [the bank's] claim is excluded from the operative provisions of the [plan].

Id. at 837. *See also In re Gurwitch*, 794 F.2d 584 (11th Cir.1986) (nondischargeable tax claims are collectible outside the debtor's confirmed plan); *In re Adelman*, 90 B.R. 1012, 1018 (Bankr.S.D.1988) (following *Howell* and *Gurwitch*); *In re Rideout*, 86 B.R. 523, 529 (Bankr.N.D.Ohio 1988) (citing *Howell* and noting in dicta that "the holder of nondischargeable debt is not restricted from collecting the balance owed outside the plan.")

Debtors assert that *Howell* is distinguishable because there, unlike in these Debtors' Plans, the nondischargeable debts were not segregated as a special class. Debtors contend that when such debts are segregated, "section 1141 does not specifically preclude such a proposal." Debtors' Reply Br. at 3.

■ This argument misses the point. Section 1141(d) excludes debts enumerated under § 523(a) from discharge. Debtors concede that their restitution obligations are such debts. The authority cited above recognizes that parties to whom such debts are owed cannot have their rights under nonbankruptcy law restricted by a plan of reorganization. Accordingly, Debtors' proposed Plans are not confirmable because each Plan attempts to restrict the United States and the Class 4 Creditors to collection only as provided in the Plans. This would curb rights afforded these parties under the restitution order and 18 U.S.C. § 3663(h).

---

**5.** Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to property of another entity."

Debtors also argue that public policy favors permitting the type of Plan they have proposed because it fosters rehabilitation and equality of treatment among a debtor's other creditors. Debtors correctly point out that the inability to bind a creditor holding a nondischargeable debt to a plan of reorganization might very well doom the plan's prospects for success. This is particularly true where as here the debts owed the Class 4 Creditors are the largest claims against the Debtors and efforts by these creditors outside the Plan to enforce these obligations might consume all of Debtors' assets and effectively preclude other creditors from receiving payments.

Debtors' broad public policy arguments in this context are unavailing. The importance of policy underlying the nondischargeability of an obligation imposed as part of a criminal sentence was recognized by the Supreme Court in *Robinson*. The Court observed that the Bankruptcy Code was enacted against the background of an established judicial exception to discharge for criminal sentences and that this exception reflected "a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Robinson*, 479 U.S. at 46–47, 107 S.Ct. at 360.[6] Section 1141(d)(2) specifically states that a plan does not discharge an individual debtor from any debt excepted from discharge in § 523. By enacting this section, Congress addressed the conflicting policy arguments and decided that the goals of rehabilitation and equality of treatment, as effectuated through the ability to bind creditors to a plan of reorganization, must give way to the policies underlying the nondischargeability provisions of § 523.

Debtors' final argument is that this court should defer discharge until after the completion of the proposed Plans and make discharge contingent on full payment to the Class 4 Creditors.[7] Debtors' theory is that because the automatic stay generally remains in effect until discharge, it would preclude any efforts by the Class 4 Creditors to collect on the restitution obligations until payments were complete. Accordingly, Debtors would be able to implement their Plans without interference.

There is some authority supporting the position that a court in a Chapter 11 Bankruptcy proceeding can defer discharge until completion of the plan. *See, e.g., In re C & P Gray Farms, Inc.*, 70 B.R. 704, 711 (Bankr.W.D.Mo.1987). Judge Ginsberg states in his treatise:

> The Bankruptcy Code provides that the confirmation of a Chapter 11 plan works to discharge a debtor "[e]xcept as otherwise provided in ... the plan, or in the order confirming the plan ..." Thus, it is at least arguable that the court has the power to provide in the order of confirmation that confirmation will not discharge the debtor, but that discharge will have to wait for some further event such as completion of the payments called for by the plan. Nothing in the Code or Rules precludes such an approach.

1 Ginsberg, *Bankruptcy* § 11.11[b] at 995, adopting by reference discussion in § 11.11[a] at 994.

Even assuming that bankruptcy courts have the power to defer discharge under Chapter 11 until completion of the plan payments, the standards for exercise of such authority are not clear. *See, e.g., Gray Farms*, 70 B.R. at 711 (stating that the reasons for deferring discharge was to avoid "confer[ring] upon the *debtors* an unmerited advantage whereby their simply offering, in the confirmed plan, to pay certain debts as they are compromised or ex-

---

**6.** Although the Supreme Court in *Robinson* specifically emphasized the importance of not interfering with *state court* criminal sentences, most of the same arguments are equally applicable to sentences imposed by federal district courts. This is illustrated by the fact that in *Robinson* the Court cited *In re Moore*, 111 F. 145, 148, 149 (W.D.Ky.1901), as "the leading case" and quoted its statement that "nothing but a ruling from a higher court would convince me

that congress, by any provision of the bankrupt act, intended to permit the discharge, under its operations, of any judgment rendered by a *state or federal court* imposing a fine in the enforcement of criminal law...."

**7.** This position is not spelled out in Debtors' Plans, but rather is developed in their memoranda supporting their Plans.

tended in that plan, operates to extinguish the original indebtedness.") (emphasis added). However, it is clear that the facts of this case are particularly inappropriate for exercising the authority to defer discharge through a Chapter 11 confirmation order. As discussed above, the statutory provisions address and reconcile the conflicting policy arguments involved here. Applicable criminal and bankruptcy statutes clearly contemplate that restitution obligations imposed as part of a criminal sentence cannot be altered through the vehicle of a reorganization under Chapter 11. It would undercut Congress's resolution of this issue to permit Debtors to attempt to achieve a different result by obtaining protection from prompt collection of restitution through the deferral of discharge until payments under their Plans were complete. A convicted criminal may not look to Chapter 11 bankruptcy for relief from restitution required in his criminal case.

Accordingly, by separate orders in each case, the Disclosure Statements will be disapproved and the Plans stricken.