45 F.3d 373
 75 A.F.T.R.2d 95-662, 63 USLW 2434,
32 Collier Bankr.Cas.2d 1675,
Bankr. L. Rep. P 76,322
 In re Hugh Daniel DEPAOLO, dba Hugh D. DePaolo, M.D., dba
Casper Birthing Center; and SIRI JANE DEPAOLO, Debtors.
Hugh Daniel DEPAOLO, dba Hugh D. DePaolo, M.D., dba Casper
Birthing Center; and Siri Jane DePaolo, Appellees,
v.
UNITED STATES of America, acting through the INTERNAL
REVENUE SERVICE, Appellant.
 No. 94-8029.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 9, 1995.
 
 Loretta C. Argrett, Asst. Atty. Gen., William S. Estabrook, Edward T. Perelmuter, Tax Div., Dept. of Justice, Washington, DC (David D. Freudenthal, U.S. Atty., Cheyenne, WY, of counsel), for appellant.
 Jeffrey T. Wegner, Michael J. Mills of Kutak Rock, Omaha, NE, Russell M. Blood of Brown & Drew, Casper, WY, for appellees.
 Before BALDOCK and McKAY, Circuit Judges, and VRATIL,* District Judge.
 McKAY, Circuit Judge.
 
 
 1
 The Internal Revenue Service (IRS) appeals the district court's determination that res judicata barred the IRS from collecting any additional taxes from debtors for tax year 1986 after the bankruptcy proceedings were closed, because the IRS had submitted a proof of claim for 1986 taxes in the bankruptcy proceedings and debtors had provided for payment of the claim in full in their reorganization plan. The IRS argues that sections 523(a) and 1141(d)(2) of the Bankruptcy Code preclude the application of principles of res judicata to their claim. The parties cite numerous cases, but, so far as we can determine, there is no case directly on point. Debtors argue that even if res judicata does not apply, the IRS should be equitably estopped from assessing or collecting any additional taxes for 1986.[1]
 
 
 2
 Debtors filed for Chapter 11 reorganization in February 1986. On December 15, 1987, the IRS filed a proof of claim for what it believed to be debtors' tax liability for tax years 1985 and 1986. The amount attributable to tax year 1986 was $26,724. In February 1988, debtors filed their second amended plan of reorganization, which provided in paragraph 3.01 as follows: "The Debtors shall make deferred cash payments in monthly installments on the Class 3 claim of the IRS over a period not exceeding six years equal to the allowed amount of such claim plus interest in accordance with IRC Section 6601." Appellees' Supplemental App. at 68.
 
 
 3
 The IRS and debtors subsequently executed a stipulation providing that the amount of the allowed claim referenced in paragraph 3.01 of the plan was $74,434.72 plus interest, that debtors would begin monthly payments to the IRS under the plan in the amount of $1,400 within thirty days of the plan's confirmation, and that the claim would be paid in full upon the sixtieth payment. In connection with this stipulation, the IRS filed a second proof of claim on March 21, 1988, for what it believed to be debtors' tax liability for tax years 1984, 1985, 1986, and 1987. The total amount of liability reflected on this proof of claim was $74,434.72 plus interest, of which $26,724 was attributable to the 1986 tax year.
 
 
 4
 The IRS did not object to the plan, and the bankruptcy court confirmed the plan on April 19, 1988. The confirmation order provided in pertinent part that debtors were "discharged from any debt that arose before the date of confirmation, subject to the conditions and exceptions contained in 11 U.S.C. Sec. 1141(d)." Appellees' Supplemental App. at 73. Thereafter, debtors began making payments under the plan, which were reflected in amended proofs of claim filed by the IRS on July 20, 1988, and April 27, 1989. Like the previous proofs of claim, these proofs of claim listed debtors' tax liability for 1986 as $26,724. On October 18, 1989, the bankruptcy court issued an order closing the bankruptcy proceedings.
 
 
 5
 Shortly thereafter, in November 1989, the IRS notified debtors of its intent to audit their 1986 tax return. As a result of the ensuing audit, the IRS issued a notice of deficiency to debtors in June 1991 reflecting that they owed an additional $12,000 in taxes, as well as additions to tax in the amount of $2,024. Debtors then moved to reopen the bankruptcy proceedings so they could file a declaratory judgment action as to the scope and effect of the confirmation of their plan. Specifically, debtors argued that the bankruptcy proceedings fully and finally determined the amount of their tax liability for 1986 and that principles of res judicata and equitable estoppel prohibited the IRS from assessing any additional taxes for that year.
 
 
 6
 The bankruptcy court entered summary judgment for the IRS, concluding that "the tax at issue is a new tax which was not previously treated under the debtors' confirmed Chapter 11 Plan." Appendix at 33. The district court reversed the bankruptcy court, concluding that "the IRS' proofs of claim in the debtors' prior Chapter 11 proceeding judicially determined the legality and amount of the tax claims," and, therefore, the IRS' attempt to assert a claim for additional tax liability was barred by the doctrine of res judicata. DePaolo v. United States (In re DePaolo), 165 B.R. 491, 494 (D.Wyo.1994).
 
 
 7
 Section 1141(d)(2) of the Bankruptcy Code provides that "[t]he confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title." 11 U.S.C. Sec. 1141(d)(2). Section 523, in turn, provides in pertinent part that a discharge under 11 U.S.C. Sec. 1141 "does not discharge an individual debtor from any debt--(1) for a tax or a customs duty--(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed." Id. Sec. 523(a)(1)(A) (emphasis added).
 
 
 8
 The parties do not dispute that the taxes and additions at issue here are of the type specified in 11 U.S.C. Sec. 507(a)(7). Therefore, the taxes were not dischargeable in debtors' bankruptcy. Although "[a] confirmed plan generally binds any creditor regardless of whether the creditor's claim is impaired by the plan or whether the creditor accepted the plan," In re Amigoni, 109 B.R. 341, 343 (Bankr.N.D.Ill.1989), the same is not true of a creditor whose claim is nondischargeable.
 
 
 9
 "The party to whom [a nondischargeable] debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy." Id. at 345; see also Grynberg v. United States (In re Grynberg), 986 F.2d 367, 370 (10th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993); Goodnow v. Adelman (In re Adelman), 90 B.R. 1012, 1018 (Bankr.D.S.D.1988). But see In re Mercado, 124 B.R. 799, 801 (Bankr.C.D.Cal.1991) (holding that although "the plan cannot discharge the debt, ... the claimant may otherwise subject the debt to the provisions of a confirmed plan"). Therefore, "the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. Sec. 523." United States v. Gurwitch (In re Gurwitch), 794 F.2d 584, 585 (11th Cir.1986); see also In re Olsen, 123 B.R. 312, 314 (Bankr.N.D.Ill.1991) (noting that the debtor's position was premised "on a mistaken belief that the amount of dischargeable debt the debtor owes the IRS somehow is confined to the amount of the IRS' allowed claim against the estate").
 
 
 10
 While principles of res judicata apply generally to bankruptcy proceedings, the plain language of Secs. 1141 and 523 forbid the application of those principles to the facts of this case.[2] By expressly providing that the described taxes are not discharged "whether or not a claim for such taxes was filed or allowed," 11 U.S.C. Sec. 523(a)(1)(A) (emphasis added), Congress has determined that the IRS may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, then audit and make additional claims for that same year, even though such conduct may seem inequitable or may impair the debtor's fresh start.
 
 
 11
 As we stated in Grynberg,
 
 
 12
 [a]lthough allowing the IRS to pursue its claim after the confirmation and consummation of a Chapter 11 plan admittedly conflicts with the "fresh start" policy animating the Code's discharge provisions, "it is apparent to us that Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code." This is an express congressional policy judgment that we are bound to follow.
 
 
 13
 986 F.2d at 371 (quoting Gurwitch, 794 F.2d at 585-86). Thus, the Fifth Circuit recently rejected a debtor's argument that allowing the IRS to wait until after confirmation of the plan to pursue its claim for pre-petition taxes, of which debtor and the other creditors were not previously aware, would prejudice the debtor's reorganization and impair his fresh start. Fein v. United States (In re Fein), 22 F.3d 631, 633 (5th Cir.1994). Noting that "[t]he courts of appeals that have considered this issue have concluded that in the case of individual debtors, Congress consciously opted to place a higher priority on revenue collection than on debtor rehabilitation or ensuring a 'fresh start,' " the court held that "[w]ith regard to individual debtors, ... the deleterious effects of hidden liabilities ... are outweighed by the desire for revenue collection." Id.
 
 
 14
 Having determined that the district court erroneously held that the IRS was barred by principles of res judicata from assessing or collecting any additional taxes for 1986 beyond those provided for in debtors' reorganization plan, we must now consider whether the IRS should, nonetheless, be equitably estopped from pursuing additional tax liabilities for tax year 1986. The district court did not address this issue, and the bankruptcy court did not make any findings with respect to equitable estoppel. We need not remand the matter to the bankruptcy court for further findings, however, because we conclude that debtors have failed as a matter of law to establish the requirements of equitable estoppel.
 
 
 15
 "Courts generally disfavor the application of the estoppel doctrine against the government and invoke it only when it does not frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws." FDIC v. Hulsey, 22 F.3d 1472, 1489 (10th Cir.1994). Thus, "equitable estoppel against the government is an extraordinary remedy." Board of County Comm'rs v. Isaac, 18 F.3d 1492, 1498 (10th Cir.1994).
 
 
 16
 "It is far from clear that the Supreme Court would ever allow an estoppel defense against the government under any set of circumstances. However, even assuming estoppel could be applicable, the Court has indicated that there must be a showing of affirmative misconduct on the part of the government." Hulsey, 22 F.3d at 1490 (citation omitted). "Affirmative misconduct is a high hurdle for the asserting party to overcome." Id. "Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact. Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct." Isaac, 18 F.3d at 1499 (citation omitted).
 
 
 17
 In addition to showing the IRS engaged in affirmative misconduct, to establish their claim of equitable estoppel, debtors must show that: (1) the IRS knew the facts; (2) the IRS intended its conduct to be acted upon or so acted that debtors had the right to believe it was so intended; (3) debtors were ignorant of the true facts; and (4) debtors relied on the IRS' conduct to their injury. See Hulsey, 22 F.3d at 1489.
 
 
 18
 Debtors contend that by filing four different proofs of claim setting forth the same amount of taxes due for tax year 1986 and by stipulating to the total amount of their allowed claim in the bankruptcy proceeding, the IRS engaged in affirmative misconduct, upon which debtors relied to their detriment. At the time the IRS filed the proofs of claim and entered into the stipulation, it had not yet audited debtors' returns. Until the IRS conducted its audit, it was not aware of the true facts as to debtors' tax liability for 1986. Debtors have not suggested that in conducting the audit or in assessing the additional taxes and penalties, the IRS exceeded the authority otherwise granted it under non-bankruptcy law. Further, we note that, by specifically providing that a tax "not assessed before, but assessable, under applicable law ... after, the commencement of the [bankruptcy] case," 11 U.S.C. Sec. 507(a)(7)(A)(iii), is not dischargeable "whether or not a claim for such tax was filed or allowed," id. Sec. 523, Congress intended that the IRS not be forced to audit and assess all taxes during the course of bankruptcy proceedings in order to preserve its right to collect such taxes.
 
 
 19
 The IRS' failure to advise debtors that the amount reflected in the proofs of claim might not be the full amount of taxes actually due for 1986 does not constitute affirmative misconduct. See In re Stuber, 142 B.R. 435, 440 (Bankr.D.Kan.1992). Further, any reliance by debtors on the IRS' acts or omissions would not be legally justified, because " 'a reasonable debtor should expect that the IRS will seek to enforce ... claims [for taxes that are nondischargeable].' " Gurwitch, 794 F.2d at 586 (quoting Needham's Motor Serv., Inc. v. Department of Treasury (In re Becker's Motor Transp., Inc.), 632 F.2d 242, 249 (3d Cir.1980), cert. denied, 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981)). Thus, debtors have failed as a matter of law to establish a claim for equitable estoppel.
 
 
 20
 Accordingly, the judgment of the United States District Court for the District of Wyoming is REVERSED, and the action is REMANDED with directions to reinstate the judgment of the United States Bankruptcy Court for the District of Wyoming.
 
 
 
 *
 Honorable Kathryn H. Vratil, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 The host of cases relied on by debtors dealing with res judicata in bankruptcy cases is thus irrelevant to this case, as the cases deal either with res judicata principles generally or with sections of the Bankruptcy Code not covered by these express provisions