**In re James LUARKS, Jr. and Diana Sherril Luarks, Debtors.**

**No. 02–41640–13.**

United States Bankruptcy Court, D. Kansas.

July 29, 2003.

Andrew T. Pribe, U.S. Department of Justice, Tax Division, Washington, D.C., Jay D. Befort, Topeka, KS, Linda S. Mock, Overland Park, KS, for Creditors.

Jan Hamilton, Topeka, KS, Chapter 13 Trustee.

Sterling S. Waggener, Topeka, KS, for debtors.

## MEMORANDUM AND ORDER

JANICE MILLER KARLIN,
Bankruptcy Judge.

The Trustee has filed objections to $189.60 of Claim No. 1, filed by the Internal Revenue Service (IRS) (Doc. No. 18), and $159.70 of Claim No. 11, filed by the Kansas Department of Revenue (KDOR) (Doc. No. 17). These amounts represent pre-petition interest on priority claims of these two taxing authorities. These taxing authorities have in turn opposed the Trustee's objection. Debtors have not opposed the claims, nor participated in any fashion in the dispute over these claims.

The Court has reviewed the Stipulation of Facts submitted by the Trustee and the taxing authorities (Doc. No. 24), and is prepared to rule. The Court makes the following findings of fact and conclusions of law according to Federal Rule of Bankruptcy Procedure 7052. The Court has jurisdiction by virtue of 28 U.S.C. § 1334.

## I. STATEMENT OF FACTS

On June 28, 2002, the Debtors, James and Diana Luarks, filed for bankruptcy under Chapter 13. Their Chapter 13 Plan, filed with their petition, provided as follows:

| CREDITOR | | | AMOUNT |
|---|---|---|---|
| ** 7. PRIORITY CLAIMS: | 1. | *IRS* | $5,619.00 |
| | 2. | *KS Dept. of Revenue* | $1,836.00 |

*See* Doc. No. 3. At the very bottom of the page where this language appears, the following was typed using the same font and type size as the rest of the plan, apparently meant to match up to the double asterisk next to the "Priority Claim" section of the Plan:

> * * Amount of taxes owing shall be treated as priority and paid in full. Interest and penalties shall be treated as general unsecured.

Although the language of the Plan does not expressly indicate that Debtors intend to pay these priority claims, except as noted in the double asterisk " * * " provision at the bottom of page 2, because a plan cannot be confirmed without payment, in full, of priority claims, the Trustee likely construed the plan to call for payment of priority claims. 11 U.S.C. § 1322(a)(2).[1]

The following chart represents the breakdown of the claims filed:

---

**1.** All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., unless otherwise specified.

| CREDITOR AND TOTAL CLAIM AMOUNT | TAXES OWED 1999–2002 [2] | TAXES OWED PRE–1999 | PRE–PETITION INTEREST ON PRIORITY DEBT | PRE–PETITION INTEREST ON UNSECURED DEBT | PENALTY ON UNSECURED DEBT |
|---|---|---|---|---|---|
| IRS $4,453.16 | $3,836.00 | $79.98 | $189.60 | $45.06 | $302.52 |
| KDOR $2,394.22 | $1,836.00 | $ .00 | $159.70 | $ .00 | $398.52 |

Neither IRS, KDOR, nor the Trustee objected to the Plan, and the Plan was confirmed September 30, 2002. There is no allegation that IRS or KDOR failed to receive notice of the plan, or lacked the opportunity to object. Neither IRS nor KDOR appealed the order of confirmation.

On November 18, 2002, just seven weeks after confirmation, the Trustee objected to portions of both claims on the basis that "Interest and Penalties are to be Treated as General Unsecured Per the Plan." The impact of this objection, if sustained, is that $189.60 in pre-petition interest on IRS' priority claim, and $159.70 in pre-petition interest on KDOR's priority claim, would be accorded unsecured general status. Because the plan, as confirmed, will likely pay zero dividends to unsecured creditors (see Doc. No. 11), IRS and KDOR stand to receive nothing from the bankruptcy estate on its pre-petition interest claims. The plan does not expressly provide that the unpaid amounts will be discharged upon completion of the plan, only that they will not be paid during the life of the plan by the trustee. However, it appears IRS and KDOR are likely concerned these unpaid priority claims will, in fact, be discharged upon completion of the plan pursuant to Section 1328(a).

## II. ISSUE OF LAW

Whether, under the principles of res judicata, a debtor may, through the use of plan language in derogation of the Bankruptcy Code, discharge otherwise nondischargeable tax obligations in a Chapter 13 proceeding, if the impacted creditor fails to object and the plan is confirmed.

## III. ANALYSIS

■ The Trustee argues that language contained in a Chapter 13 plan is essentially an "offer" from the debtor to the creditor regarding how that creditor's claim will be paid upon confirmation, and the creditor may reject or accept that offer. The Trustee further contends that if the creditor fails to object, that failure can be construed as acceptance of the offer. He contends this is the simple proposition for which *Andersen v. UNIPAC–NEBHELP (In re Andersen),* 179 F.3d 1253 (10th Cir.1999) stands. The taxing authorities, realizing that *Andersen,* albeit controversial, is nevertheless binding precedent in this Circuit, argue that *Andersen* is distinguishable from the facts of this case in many significant particulars.

First, they argue that the Tenth Circuit in *Andersen* was most concerned with issues of finality, because the creditor in that case not only failed to timely object to

**2.** Section 507(a)(8)(A)(i) provides the treatment of taxes depending, at least in part, on the age of the tax due.

confirmation of the plan, although it did object prior to confirmation, but then failed to appeal the order of confirmation. These failures allowed the debtor to complete the payments under the plan and obtain a discharge before the creditor finally contested the issue. The Tenth Circuit was understandably concerned about how the late contest by the student loan creditor would impair the debtor's fresh start.

Here, although the taxing authorities clearly failed to object to confirmation or file an appeal, which they should have done, the Trustee filed a quick objection, only a few weeks after confirmation, which brings the issue before the court many years earlier in the life of the plan than it was in *Andersen*. Unlike in *Andersen*, if the Luarks are required to pay the $349.30 that is the subject of this dispute, their plan remains feasible, since at confirmation it was a 42 month plan, with payments of $300 per month. Thus, by the addition of less than two months of payments, this amount can be paid without any impairment of the Debtors' fresh start. Thus, a key factor in the *Andersen* Court's analysis is inapplicable to these facts.

Second, the taxing authorities argue that *Andersen* dealt with student loans which, although presumptively nondischargeable, can in fact be discharged if the Bankruptcy Court makes a finding that excepting the student loan from discharge will impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8) Their argument is that the Code provides a vehicle for the Court to determine if a particular student loan can, in fact, be discharged, and the Plan can constitute that vehicle. This case, on the other hand, deals with interest on priority tax claims, which the Code provides no vehicle for discharging under any set of facts. *See In re Bates*, 974 F.2d 1234, 1237 (10th Cir.1992).[3]

This Court agrees that the distinction between a student loan debt, which Congress expressly provided could be discharged with certain factual findings, and a priority tax claim, which cannot be discharged under any circumstance, without consent of the taxing authority, is an important distinction. The Tenth Circuit in *Andersen* also felt this was an important distinction. The creditor, in trying to persuade the Tenth Circuit not to discharge the student loans in that case, relied upon two Tenth Circuit cases dealing with non-dischargeable tax debts. Those cases were *DePaolo v. United States (In re DePaolo)*, 45 F.3d 373 (10th Cir.1995) and *Grynberg v. United States (In re Grynberg)*, 986 F.2d 367 (10th Cir.1993).

In *DePaolo*, Chapter 11 debtors moved to reopen a bankruptcy proceeding so they could attempt to obtain a court order finding that the amount asserted in a notice of deficiency for a tax obligation expressly dealt with by a Chapter 11 plan was not due and payable by the debtor. Debtor specifically argued that principles of res judicata and equitable estoppel prohibited the IRS from assessing any additional taxes for the year in question. In that case, IRS had not only filed proofs of claim with an established tax liability, but had also entered into a stipulation agreeing what amount was due, and what the monthly payment needed to be to pay that amount. The debtor paid the claim amount, in the monthly amounts IRS had expressly agreed would retire the debt, and the case was subsequently closed.

---

**3.** The Trustee does not argue that pre-petition interest on priority tax claims can legally be discharged, only that the taxing authorities are estopped, at this point, from objecting to the nonpayment of the interest through the plan.

The Tenth Circuit, in overruling the District Court, which had found that IRS' later attempt to assert a claim for additional tax liability was barred by res judicata, held that

Although "[a] confirmed plan generally binds any creditor regardless of whether the creditor's claim is impaired by the plan or whether the creditor accepted the plan," *In re Amigoni*, 109 B.R. 341, 343 (Bankr.N.D.Ill., 1989), the same is not true of a creditor whose claim is nondischargeable.

"The party to whom [a nondischargeable] debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy." *Id.* at 345; *see also Grynberg v. United States (In re Grynberg)*, 986 F.2d 367, 370 (10th Cir.), cert. denied, 510 U.S. 812, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993); *Goodnow v. Adelman (In re Adelman)*, 90 B.R. 1012, 1018 (Bankr.D.S.D.1988). *But see In re Mercado*, 124 B.R. 799, 801 (Bankr.C.D.Cal.1991) (holding that although "the plan cannot discharge the debt, ... the claimant may otherwise subject the debt to the provisions of a confirmed plan"). Therefore, "the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523." *United States v. Gurwitch (In re Gurwitch)*, 794 F.2d 584, 585 (11th Cir.1986); *see also In re Olsen*, 123 B.R. 312, 314 (Bankr.N.D.Ill.1991) (noting that the debtor's position was premised "on a mistaken belief that the amount of dischargeable debt the debtor owes IRS somehow is confined to the amount of the IRS' allowed claim against the estate").

While principles of res judicata apply generally to bankruptcy proceedings, the plain language of §§ 1141 and 523 forbid the application of those principles to the facts of this case. By expressly providing that the described taxes are not discharged "*whether or not* a claim for such taxes was filed or allowed," 11 U.S.C. § 523(a)(1)(A) (emphasis added), Congress has determined that the IRS may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, then audit and make additional claims for that same year, even though such conduct may seem inequitable or may impair the debtor's fresh start.

As we stated in *Grynberg*,

[a]lthough allowing the IRS to pursue its claim after the confirmation and consummation of a Chapter 11 plan admittedly conflicts with the "fresh start" policy animating the Code's discharge provisions, "it is apparent to us that Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code." This is an express congressional policy judgment that we are bound to follow.

*DePaolo*, 45 F.3d at 375–76.

The *DePaolo* court also considered whether IRS should be equitably estopped from pursuing the additional tax liabilities. The Tenth Circuit held that courts generally disfavor the application of estoppel against the government and invoke it only when it does not frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws. *Id.* at 376. The Court went on to hold that "equitable estoppel against the government is an extraordinary remedy" and that there would have to be a showing of affirmative misconduct on the part of the government, a "high hurdle" for the asserting party to overcome. *Id.* Mere negligence, delay, in-

action, or failure to follow agency guidelines does not constitute affirmative misconduct. *Id.*

Similarly, the debtor in *Grynberg v. United States,* a case also relied on by the *Andersen* creditor, sought an injunction against the IRS from collecting nearly $5 million in gift taxes. In their Chapter 11 bankruptcy, debtors disputed the gift tax liability. The court had issued a bar order requiring creditors with disputed claims to file Proofs of Claim by a date certain. IRS filed a claim for income tax liabilities, but not for any gift tax liabilities. The bankruptcy court ultimately confirmed a plan that was silent regarding any gift tax liabilities, and after the plan was fully consummated, IRS sent the notice of deficiency on the gift tax liabilities. Debtors argued that because IRS had not filed a proof of claim for the disputed gift taxes, the new taxes being asserted were disallowed under the bar order and discharged at completion of the reorganization. They cited numerous cases emphasizing and supporting the finality of bar orders.

The Tenth Circuit held that those cases established only that IRS could not participate in the reorganization for any amounts not contained in a Proof of Claim, "[h]owever, like any other holder of a nondischargeable debt, the IRS is also free to pursue the debtor outside bankruptcy." *Grynberg,* 986 F.2d at 370. The Court also noted that "[a]lthough allowing the IRS to pursue its claim after the confirmation and consummation of a Chapter 11 plan admittedly conflicts with the 'fresh start' policy animating the Code's discharge provisions, 'it is apparent to us that Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code.'" *Id.* at 371.

Recently, District Judge Wesley Brown, in reviewing a student loan case, also recognized the stark contrast between how the Tenth Circuit appears to treat student loan creditors versus its treatment of taxing authorities. In *In re Poland,* 276 B.R. 660 (D.Kan.2001), the student loan creditor argued that the Tenth Circuit's decisions in tax contexts could not be ignored in the student loan context, because both kinds of debts are nondischargeable under the Bankruptcy Code. Judge Brown, in response, stated that

> Unlike the student loan exception to discharge in § 523, the tax exception in § 523(a)(1)(A) makes explicit that taxes remain collectible "whether or not a claim for such tax was filed or allowed." As the Tenth Circuit cases explain, this provision represents a specific determination by Congress that the principles of res judicata generally applicable in bankruptcy (and which Andersen applied to erroneous discharge of a student loan) cannot be applied insofar as debts for taxes are concerned. See *DePaolo v. United States (In re DePaolo),* 45 F.3d 373, 376 (10th Cir.1995); *Grynberg v. United States (In re Grynberg),* 986 F.2d 367, 371 (10th Cir.1993).

*Id.* at 664–65. Judge Brown also noted that "tax cases such as *in re Grynberg* are distinguishable from student loan debt cases because of the specific Congressional determination in § 523(a)(1)(A) that res judicata principles in bankruptcy do not bar the IRS from collection of tax debts." *Id.* at 665 n. 1.

Finally, even the *Andersen* court noted that tax cases are distinguishable from student loan cases when it stated

> This case does not represent an attempt to transform a debt which remained nondischargeable throughout the plan period into a dischargeable debt at the conclusion of the period. Rather, unlike

the tax cases, the finding of undue hardship in the confirmed plan changed the nature of the debt into a dischargeable debt. As the BAP said, "[t]he plan ... resolved a potential controversy about whether payment of the student loan would result in an undue hardship to the debtor. Confirmation of the plan constituted a finding to that effect, thereby rendering the loan dischargeable." *In re Andersen*, 215 B.R. 792, 796 (10th Cir. BAP 1998). *Andersen*, 179 F.3d at 1253. Accordingly, this Court believes, in light of not only the language of *DePaolo* and *Grynberg*, but also the limiting language in *Andersen*, itself, that the Tenth Circuit would distinguish the facts in this case from student loan cases.

■■■ Another reason this Court believes the Tenth Circuit would not apply its *Andersen* analysis to the facts of this case is that the creditors here are governmental entities,[4] and the Tenth Circuit has been loathe to estop the government from mere inaction. Here, IRS and KDOR failed to act when they did not file an objection to the proposed plan. As noted above, the Court indicated in *DePaolo* that "equitable estoppel against the government is an extraordinary remedy" and that there would have to be a showing of affirmative misconduct on the part of the government, a "high hurdle" for the asserting party to overcome. Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct. *DePaolo*, 45 F.3d at 376. The mutual goals, of tax revenue collection and preservation of the public fisc to fund the government, drive the policy behind the general rule barring estoppel against the government. Obviously, there has not been even an assertion, let alone evidence, of affirmative misconduct on behalf of these taxing entities.

Finally, this case is further distinguishable from *Andersen* because the Andersen plan contained unambiguous and specific language that resulted in the discharge of student loan debt. In this case, the Plan was not as clear. First of all, a quick look at the plan by an employee at the IRS, for example, would have demonstrated that the Debtors thought the priority claim was in the amount of $5,619. Form plans normally list the amount of the debt, and typically that is the amount the plan is proposing to pay. Since IRS' total claim— even including the admittedly unsecured portion of $427.56—was significantly lower than this number, it is entirely understandable that IRS thought its $4,025.60 claim was thus safe and would be paid.[5]

Second, the plan is further ambiguous because it indicates, unfortunately, only in a footnote, that although "taxes" would be treated as priority and paid in full, interest and penalties shall be treated as general unsecured. A literal reading of that footnote would lead one to conclude that Debtors intended to pay, in full, *all* taxes, regardless of age, thus only relegating penalties and interest to an unsecured status. The chart set forth, above, notes that IRS' Proof of Claim included $79.98 in taxes in the unsecured portion of its claim, because those were for a period that does not qualify for priority treatment under

---

4. UNIPAC–NEBHELP and ECMC may have been the successors to the holders of the original student loans in *Andersen,* and those lenders may well have been the United States, acting through the Department of Education or other governmental entity, but at the time the decision was rendered, the government was not a party.

5. KDOR would not have a similar argument, because the plan listed $1,836 owing as a priority claim, when its total claim was actually $2,394.

§ 507(a)(8). The Trustee's objection indicates that the way he read this plan was to pay some taxes as priority, but not all taxes as priority. The plan language, however, does not so precisely distinguish which "taxes" will, and will not, be so paid.

■ This Court wishes, in conclusion, to generally address an issue raised by this case arising from the high volume of Chapter 13 cases combined with a short time frame for objecting to proposed plans. As a preliminary matter, this Court finds the intentional insertion of a plan provision that bypasses clear and unambiguous language of the Bankruptcy Code and controlling case law is unacceptable, and potentially sanctionable. *See In re Gardner,* 287 B.R. 822 (D.Kan.2002) and *In re Wright,* 279 B.R. 886 (D.Kan.2002). This Court must rely on the fact that counsel appearing before it are officers of the Court and are ethically obligated to inform the Court if they are aware of the existence of a plan provision that renders the plan nonconfirmable. *In re Hensley,* 249 B.R. 318 (Bankr.W.D.Okla.2000).

■ Within this context, the Court understands that *Andersen* permits a debtor, under unique factual circumstances, to discharge certain debt—like student loans—through a plan. When those unique circumstances exist, this Court agrees with those courts that hold that any such plan must clearly and unambiguously state on its face that the debtor does not intend to file an adversary complaint or contested matter, that the confirmation order, alone, will result in discharge, and if the creditor wishes to contest this result, it must file an objection. *Cf. In re Dickey,* 293 B.R. 360 (Bankr.M.D.Pa.2003). Due process is served by such clarity.

■ Similarly, inserting such a provision in a footnote, only, in regular font and typeface, as was done in this case, especially when the content of the footnote can be interpreted to contradict the text, does not seem reasonably calculated to make the creditor aware of the impact confirmation will have on the creditor's rights. The Court suggests that, in those cases where debtor's counsel has a good faith factual and legal basis to insert plan provisions that appear to bypass Code requirements, counsel should do so in a very clear and a very conspicuous fashion, such as bold, capital letters within the text, so any due process concerns are remedied. *Id.* at 363.

■ Finally, this Court would be remiss, in light of *Andersen,* not to warn creditors that they may not fail to take an active role to protect their claims, then later complain that plan provisions were inconsistent with the Code. "[I]t is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous." *In re Gardner,* 287 B.R. at 827 (quoting *In re Harvey,* 213 F.3d 318, 322 (7th Cir.2000)). The possibility that a debtor's counsel could be sanctioned for the inclusion of improper plan provisions will be little recompense for the discharge of the creditor's debt for failing to protect its rights by a timely objection.

## CONCLUSION

The Court finds that the facts in this case are distinguishable from those found in *Andersen v. UNIPAC–NEBHELP,* 179 F.3d 1253 (10th Cir.1999), and that the failure of the taxing authorities to object to confirmation of the plan does not estop them from now requesting full payment of their respective priority claims in response to the Trustee's objection. Most importantly, this case involves an admittedly non-dischargeable tax debt, rather than a student loan that can, under certain limited circumstances, be discharged. Second-

ly, ordering payment of the $349.30 at issue, at this early stage of the case, will not impede Debtors' fresh start. Third, the debt herein is held by governmental entities who can only be estopped upon showing of affirmative misconduct, which has not been asserted here. Finally, the plan in this case is somewhat ambiguous, as opposed to the plan in *Andersen.* For these reasons, the Trustee's objections to the claims of the IRS and KDOR are overruled.

**IT IS, THEREFORE, BY THIS COURT ORDERED** that the Trustee's objection to Claim No. 1 of the Internal Revenue Service is overruled, and Claim No. 1 should be allowed as a priority claim in the amount of $4,025.60 and an unsecured general claim in the amount of $427.56.

**IT IS FURTHER ORDERED** that the Trustee's objection to Claim No. 11 of Kansas Department of Revenue is overruled, and Claim No. 11 should be allowed as a priority claim in the amount of $1,995.70 and an unsecured general claim in the amount of $398.52.