In re Cheryl Ann POLAND, Debtor.

Cheryl Ann Poland, Plaintiff–Appellee,

v.

Educational Credit Management Corporation, Defendant–Appellant,

and

Equifax Accounts Receivable and TGA, Inc., Defendants.

Bankruptcy No. 93–13185–13.
Adversary No. 99–5173.
Dist.Ct.No. 01–1154–WEB.

United States District Court,
D. Kansas.

Dec. 17, 2001.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

Educational Credit Management Corporation ("ECMC") appeals from a judgment of the bankruptcy court finding that a student loan owed by debtor Cheryl Ann Poland to ECMC was discharged. The appeal turns on the applicability of *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253 (10th Cir.1999), in which the Tenth Circuit held that a creditor's failure to timely object to a Chapter 13 plan discharging a student loan and its failure to appeal the order confirming the

plan precluded the creditor from later objecting, notwithstanding that the discharge was contrary to the Bankruptcy Code. *Id.* at 1257. Relying on *In re Andersen*, the bankruptcy court in Ms. Poland's case found that ECMC's failure (or its predecessor's failure) to raise a timely objection barred it from asserting that Ms. Poland's student loan debt was non-dischargeable.

Although the court initially scheduled this matter for oral argument, after examining the briefs and other materials in the record the court concludes that oral argument would not assist in deciding the issues presented.

## I. Facts.

The parties stipulated to the following facts in the bankruptcy court proceeding.

Cheryl Poland enrolled at Climate Control Institute on or about November 12, 1987. A few days prior, on November 6, 1987, Ms. Poland had procured a student loan from Nebhelp in the amount of $4,000.00. Due to health problems, Ms. Poland was unable to complete her courses at Climate Control Institute and withdrew from school on or about November 30, 1987. That same year, Nebhelp assigned the student loan to the U.S. Department of Education ("DOE").

Ms. Poland filed her Chapter 13 petition in late 1993 and her plan in 1994. Ms. Poland's plan included this clause:

> The U.S. Department of Education alleges that the Debtor owes a student loan [in] the approximate amount of $9,877.70. The Debtor disputes the validity and amount of this debt. If a Proof of Claim is filed by the U.S. Department of Education, an objection to said claim shall be filed by the Debtor. If no Proof of Claim is timely filed by the U.S. Department of Education, the claim shall be deemed discharged in its entirety upon completion of the Plan.

> The Chapter Thirteen [13] Trustee shall make no distribution to the U.S. Department of Education unless by further Order of the Court.

The Bankruptcy Court did not receive any objections to Ms. Poland's Chapter 13 plan and DOE neither filed a timely proof of claim nor objected to the proposed plan. Ms. Poland's plan was confirmed on April 20, 1994. The DOE did not appeal the confirmation order. On May 5, 1994, one day after the claim bar date, DOE filed a claim (Claim # 10). On May 9, 1994, DOE filed a notice of assignment of Claim # 10 to TGA, Inc. This is shown on the claims register as Claim # 11. Ms. Poland objected to Claim # 11. The Bankruptcy Court entered an order on December 27, 1994, sustaining Ms. Poland's objection and disallowing TGA's claim in its entirety. Ms. Poland successfully completed her Chapter 13 plan and the Bankruptcy Court entered an Order of Discharge and Final Decree on January 6, 1999. The Discharge Order stated in part: "[D]ebtor is discharged for all debts, provided for by the plan except any debt: * * * (c) for a student loan or educational benefit overpayment as specified in 11 U.S.C. Section 523(a)(8) in any case in which discharge is granted prior to October 1, 1996." No creditors objected to Ms. Poland's discharge. No one appealed or sought other relief in connection with the Discharge Order.

ECMC is now the holder of the student loan obligation through a series of assignments. Following Ms. Poland's discharge, ECMC attempted to collect the loan. Ms. Poland reopened her bankruptcy case and commenced this proceeding seeking the Bankruptcy Court's determination that the language of her plan and of the Discharge Order discharged the student loan. ECMC timely answered the complaint and alleged that the student loan had not been

discharged and is non-dischargeable. The Bankruptcy Court, relying on In re Andersen, found that although the plan should not have been confirmed with the provision discharging the student loans, that provision and the discharge order were nonetheless binding on the parties under principles of finality and res judicata and the student loan was discharged.

## II. Tenth Circuit ruling in In re Andersen.

The Bankruptcy Code generally provides that a discharge does not discharge debt arising from a government-guaranteed or insured educational loan "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." *In re Andersen,* 179 F.3d 1253, 1255 (10th Cir. 1999) (citing 11 U.S.C. § 523(a)(8)). This policy is reflected in Chapter 13 of the Code, which states (insofar as relevant here) that a discharge granted under § 1328 discharges all debts provided for in the debtor's plan except for certain kinds of debt specified in § 523(a), which includes the foregoing student loan hardship provision.

In *In re Andersen,* the debtor's Chapter 13 plan included the following language:

All timely filed and allowed unsecured claims, including the claims of [HEAF] ..., which are government guaranteed education loans, shall be paid ten percent (10%) of each claim, and the balance of each claim shall be discharged. Pursuant to 11 U.S.C. § 523(a)(8), excepting the aforementioned education loans from discharge will impose an undue hardship on the debtor and the debtor's dependents. Confirmation of debtor's plan shall constitute a finding to that effect and that said debt is dischargeable.

*In re Andersen,* 179 F.3d at 1254. With the exception of this "finding" in the debtor's plan, the Andersen case is nearly identical to the instant case. The creditor holding the student loan promissory notes in Andersen, HEAF, filed an objection to the plan but it was denied as untimely. The plan was subsequently confirmed. HEAF did not appeal the order of confirmation. *Id.* The student loan notes were later transferred from HEAF to ECMC. The debtor completed all payments under the plan and was granted a discharge pursuant to § 1328(a)(2). When ECMC subsequently tried to collect on two of the promissory notes, the debtor re-opened her bankruptcy case and filed a complaint to determine the dischargeability of the student loan debt.

The Bankruptcy Court in *Andersen* ruled that the debt was not dischargeable because the debtor had not proven undue hardship in an adversary proceeding as required by the Bankruptcy Code. On appeal, however, the Tenth Circuit Bankruptcy Appellant Panel and a panel of the Tenth Circuit ruled otherwise. The Tenth Circuit noted that under § 1327(a), a final order confirming a chapter 13 plan "represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is res judicata and its terms are not subject to collateral attack." *Id.* at 1258. Thus, the order of confirmation was "res judicata as to the issue of hardship," and even though the discharge was inconsistent with the Bankruptcy Code, "it is now too late" for ECMC to make the argument that the debt was non-dischargeable. *Id.* at 1259. The court noted that § 1327 serves the same purpose as the doctrine of res judicata, and said there must be finality to a confirmation order so all parties can rely on it without concern that their actions may be undermined by a later change or revocation of the order.

*Id.* The court recognized that Congress has sought to progressively limit the discharge of student loans, but "under the particular facts of this case, we merely conclude that the strong policy favoring finality, coupled with the creditor's complete failure to properly protect its interests during the course of the bankruptcy proceedings" resulted in the debt being discharged. *Id.* at 1260.

## III. Discussion.

■ ECMC raises five main arguments on appeal. Its first contention is that a Chapter 13 plan that does not contain a finding of "undue hardship" cannot discharge a student loan debt. Although this particular issue was not before the Andersen court, there is language in Andersen hinting at a possible distinction between a plan purporting to find "undue hardship" and one like Ms. Poland's that makes no such finding. In Andersen, the court rejected the creditor's argument that discharge of student loans was analogous to cases involving certain tax debts in which the Tenth Circuit had held that a confirmed plan did not bar the IRS from collecting the non-dischargeable debts. In distinguishing the case before it from these tax cases, the Andersen court seemed to place some importance on the finding of undue hardship in the Andersen debtor's plan:

ECMC argues that this result [discharging the student loans] effectively turns an expressly nondischargeable debt into a dischargeable debt. For this proposition, ECMC cites and relies upon our decisions in *DePaolo v. United States*, 45 F.3d 373 (10th Cir.1995), and *Grynberg v. United States*, 986 F.2d 367 (10th Cir.1993). Both cases involved a nondischargeable tax debt, and we held that, because the debts of the Internal Revenue Service (IRS) are nondischargeable, a confirmed plan does

not bar the IRS from assessing and collecting taxes. *DePaolo*, 45 F.3d at 376. We agree with the BAP that ECMC's reliance on these cases is misplaced. This case does not represent an attempt to transform a debt which remained nondischargeable throughout the plan period into a dischargeable debt at the conclusion of the period. Rather, unlike the tax cases, the finding of undue hardship in the confirmed plan changed the nature of the debt into a dischargeable debt. As the BAP said, "[t]he plan . . . resolved a potential controversy about whether payment of the student loan would result in an undue hardship to the debtor. Confirmation of the plan constituted a finding to that effect, thereby rendering the loan dischargeable." *In re Andersen*, 215 B.R. 792, 796 (10th Cir. BAP 1998).

■ *Id.* at 1259–60. Although at first glance this passage seems to support the position now asserted by ECMC, this court cannot find that the lack of an "undue hardship" finding in Ms. Poland's plan precludes application of the finality principle endorsed in Andersen. Notwithstanding the above passage, the balance of Andersen and its underlying rationale strongly suggest that the same rule of finality would apply to the circumstances of this case. As an initial matter, there is a more compelling distinction than was mentioned in Andersen between discharge of student loans (with or without a finding of undue hardship) and discharge of tax debts. Unlike the student loan exception to discharge in § 523, the tax exception in § 523(a)(1)(A) makes explicit that taxes remain collectible "whether or not a claim for such tax was filed or allowed." As the Tenth Circuit cases explain, this provision represents a specific determination by Congress that the principles of res judicata generally applicable in bankruptcy (and which Andersen applied to erroneous dis-

charge of a student loan) cannot be applied insofar as debts for taxes are concerned. See *DePaolo v. United States (In re DePaolo)*, 45 F.3d 373, 376 (10th Cir.1995); *Grynberg v. United States (In re Grynberg)*, 986 F.2d 367, 371 (10th Cir.1993). In addition to this distinction, the Andersen court obviously recognized that discharge of student loans without proof of hardship was inconsistent with the Code—just as the discharge was in the instant case—but nevertheless said the critical factor was "that [the creditor], as the party affected by this determination, failed to properly challenge the language at issue, the interim rulings of the bankruptcy court, or the confirmed plan." *Id.* at 1257. Thus, "[w]hile we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the ... plan rested with [the creditor], not with the bankruptcy court or the trustee." *Id.* at 1257–58 (citing *In re Szostek*, 886 F.2d 1405, 1414 (3rd Cir. 1989)). Although one might argue that a plan purporting to discharge student loans without a finding of hardship is void because it is contrary to the Code, Andersen stated flatly that "a confirmed plan, or any provision thereof, is not rendered void merely because a certain provision of the plan may be inconsistent with, or even contrary to, the Code." *Andersen*, 179 F.3d at 1257, n. 8. In sum, then, if a creditor fails to make a timely objection "it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code." *Andersen*, 179 F.3d at 1258. The same reasoning applies with equal force to the plan in the instant case, notwithstanding the absence of any finding of undue hard-

ship. The plan and discharge order provided for the discharge of the student loans in question. Although the court is not particularly enthused about upholding a discharge that is clearly inconsistent with the Bankruptcy Code, a faithful reading of Andersen requires application of the same rule of finality under the circumstances of this case. As the Bankruptcy Court here noted, the Tenth Circuit BAP has interpreted Andersen in precisely this manner, holding in an unpublished decision that res judicata barred an untimely challenge to a discharge of student loans notwithstanding the absence of a finding of undue hardship in the plan. See *Peterson v. Student Loan Marketing Ass'n (In re Peterson)*, 251 B.R. 441 (Table), 1999 WL 977069 (10th Cir. BAP 1999). Under the circumstances, the court agrees that Andersen must be interpreted in this manner, and concludes that ECMC's argument must be rejected under the rule of Andersen.

■ ECMC's second argument is premised upon the language of the Ms. Poland's plan and the distinction between a claim and a debt. Even if its claim was properly rejected in the bankruptcy, ECMC argues, this does not mean the underlying debt was discharged. According to ECMC, rejection of the claim would only mean ECMC could not participate in or receive payments under the plan. Once the plan was completed, however, ECMC believes that the debt could be collected. Citing, inter alia, *In re Grynberg*, 986 F.2d 367, 370 (10th Cir.1993) ("[D]efendant's failure to file a proof of claim for gift taxes precluded it from participating in the voting and distribution under the plaintiff's Chapter 11 plan.... However, a bankruptcy court's determination of a claim's untimeliness does not affect application of the

§ 523 exceptions to discharge.").[1]

In support of this argument, ECMC asserts that Ms. Poland's plan said the student loan "claim"—but not the "debt"—was discharged. Although there is a distinction between disallowance of a claim and discharge of a debt, the distinction does not aid ECMC in this case. Although it is true Ms. Poland's plan referred to the student loan "claim" and said "the claim shall be discharged in its entirety" upon completion of the plan, the plan also referred to the student loan obligation as "this debt." In addition to this reference to the debt, a "discharge[ ] in its entirety" indicates that the underlying debt was the subject of the order of discharge. Under the circumstances, the court must conclude that when the discharge order provided the debtor was "discharged from all debts provided for by the plan or disallowed under 11 U.S.C. § 502,"[2] the student loan debt was within the scope of the order and the debt was discharged pursuant to the terms of the order.

ECMC's third argument is based on the language of the discharge order, which provided in part for discharge of all debts in the plan except for student loans "in any case in which discharge is granted prior to October 1, 1996." The Bankruptcy Court found that because Ms. Poland's discharge was granted after October 1, 1996, her student loan debt was discharged under the language of the order. Although the Bankruptcy Court recognized that the October 1, 1996 reference in the order was "archaic" language arising from a prior version of the statute, and said the language was likely included by mistake and should have been deleted from the form of discharge, the court nevertheless concluded that the language of the order was final and binding on the parties. ECMC contends that the Bankruptcy Court erred in so finding.

■ It is certainly possible that the October 1, 1996, cut-off date was included in Ms. Poland's discharge order through inadvertence.[3] Nevertheless, as *Andersen* makes clear, the burden was on ECMC to raise a timely objection if it believed the order was erroneous. Because it failed to do so, the order is now final and the parties are bound by its provisions.[4] Un-

1. As the court noted above, tax cases such as *In re Grynberg* are distinguishable from student loan debt cases because of the specific Congressional determination in § 523(a)(1)(A) that res judicata principles in bankruptcy do not bar the IRS from collection of tax debts.

2. The exception in the discharge order for student loans discharged before October 1, 1996, will be discussed below in ECMC's third argument.

3. Prior to 1990, student loan debts were dischargeable in Chapter 13 upon completion of the plan. In 1990, Section 1328(a)(2) was amended to make student loans generally non-dischargeable by the Student Loan Default Prevention Initiative Act, part of Pub.L. 101–508. That law contained a "sunset provision" under which the amendment was slated to expire on October 1, 1996. See Pub.L. 101–508, § 3008. Thus, in 1990 when the amendment was adopted, it appeared that student loans would again become dischargeable in Chapter 13 after October 1, 1996. The sunset provision was itself later repealed, however, by Pub.L. 102–325, § 1558, effective October 1, 1992, leaving the general non-discharge rule intact. See *Peterson v. Student Loan Marketing Ass'n (In re Peterson)*, 251 B.R. 441 (Table), 1999 WL 977069, *3, n. 5 (10th Cir. BAP 1999). The language in Ms. Poland's discharge plan appears to have been based on the interim version of the statute prior to the 1992 amendment, when the sunset provision was still part of the law.

4. As the Bankruptcy Court noted, ECMC has argued that its action is not precluded by the prior judgment but it has not filed a motion for relief from the judgment. Cf. Fed.R.Civ.P. 60(b) (subject to certain time limitations, a court may grant relief from a final judgment for various reasons, including mistake or inadvertence); Fed.Bankr.R. 9024 (same).

der the order, student loan debts listed in the plan were discharged provided the discharge occurred after October 1, 1996. Because Ms. Poland's discharge was after that date, her student loan debt was discharged pursuant to the terms of the order.

■ ECMC's fourth argument is that Ms. Poland's plan is not final and binding because the United States Attorney General was not served with the plan. It is undisputed that Ms. Poland served the United States Attorney and the U.S. Department of Education, but did not serve the Attorney General. ECMC argues that service upon the Attorney General was required under the terms of Fed.R.Civ.P. 4(i)(1)(B) and Fed.R.Bankr.7004(a). Aside from the fact that the rules cited by ECMC apply to adversary proceedings, and thus were not applicable to the filing of Ms. Poland's plan, ECMC has not disputed the debtor's assertion that the U.S. Department of Education received actual notice of the plan, nor has ECMC raised any constitutional challenge to the sufficiency of the notice received by the DOE. ECMC cites no authority for its assertion that an alleged procedural error in service of process can be raised years after the fact to invalidate a judgment to which no timely objection or appeal was raised. Like the Bankruptcy Court, this court finds ECMC's argument untenable.

■ ECMC's final argument is that Andersen represents a departure from prior law and should not be applied "retroactively" to affect a plan filed before the decision was issued. The Bankruptcy Court rejected this argument after weighing the factors discussed in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The Bankruptcy Court concluded that Andersen was based on well-established law concerning the res judicata effect of an unopposed plan and final dis-

charge order, that application of Andersen in this case would not hinder that decision's operation, and that among the equities to consider was the fact that creditors such as ECMC were on notice from prior law that they could not ignore the time frame for filing claims and appealing or requesting relief from offending plans and bankruptcy court orders. As the Bankruptcy Court noted, the BAP's decision in Andersen was decided in 1998, before the discharge order was entered in Ms. Poland's case. After considering the relevant factors, the Bankruptcy Court concluded that Andersen should be applied retroactively. This court agrees. It is clear from Andersen that the Tenth Circuit did not view its ruling as a departure from precedent, but rather as a predictable consequence of a creditor's failure to timely challenge an improper discharge. Although the Tenth Circuit had not previously applied the finality doctrine in the context of a student loan, it had applied the rule in numerous other contexts, and its application of the rule in these circumstances was arguably foreshadowed by prior decisions. In view of well-established precedent on § 1327(a) and the finality doctrine, the court cannot find that the Chevron factors bar application of the Andersen decision in the instant case.

ECMC contends that "the area of student loan discharge in the Tenth Circuit is going step by step toward absurd results." Aplt. Br. at 4. It notes that the Andersen court said no less than five times that attempting to discharge a student loan through a plan was contrary to the Code, but the court nevertheless sanctioned just such a result. Although frankly this court believes the language of § 523(a)(8) and § 1328(a)(2) show the clear intent of Congress to deny such a discharge, it is the prerogative of the circuit court to interpret the law as it deems appropriate. Regard-

less of this court's view of Anderson, the court is obligated to faithfully adhere to that precedent to the extent it applies to the facts of this case. Because the court concludes that Anderson's rationale applies here, the court must conclude that Ms. Poland's student loan debt was discharged.

IV.   Conclusion.

The judgment of the Bankruptcy Court is AFFIRMED.