In re Dean Alan BOYER Karla Joy Boyer, Debtors.

Educational Credit Management Corporation, Plaintiff,

v.

Dean Alan Boyer and Karla Joy Boyer, Defendants.

In re Connie Ann Seiwert, Debtor.

In re Timothy James Nelson Shannon Deanne Nelson, Debtors.

Educational Credit Management Corporation, Plaintiff,

v.

Timothy James Nelson, Defendant.

In re Patti Jan Mersmann, Debtor.

Bankruptcy Nos. 96–42993, 96–43032, 98–41327–13, 98–41940.
Adversary Nos. 02–7141, 03–7025.

United States Bankruptcy Court, D. Kansas.

Feb. 3, 2004.

Lynn D. Lauver, Topeka, KS, for debtors.

E. Lou Bjorgaard Probasco, N. Larry Bork, Topeka, KS, Elizabeth W. Eckhart, Overland Park, KS, Steven A. Stockard, Girard, KS, Jeff A. VanZandt, VanZandt & Associates, Chtd., Wichita, KS, for creditors.

## MEMORANDUM AND ORDER

JANICE MILLER KARLIN,
Bankruptcy Judge.

These matters are before the Court on stipulated facts filed by the parties in each case. The Court has reviewed the pleadings filed by the parties and the law governing the issues, and is ready to rule. The Court has jurisdiction under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), as these are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I).

## I. Background

The issue common to each of these four cases is whether a debtor can properly discharge any part of a student loan obligation through the use of the Chapter 13 confirmation process, or whether discharge can occur only after completion of an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001(6). The more important subset of that issue is whether the confirmation order, which calls for the discharge, without objection by the impacted creditor for more than 180 days, is res judicata to any later proceeding concerning the contents of the plan that improperly attempts to discharge a student loan, notwithstanding debtor's failure to file an adversary proceeding.

In each of these cases, the debtor filed bankruptcy petitions while owing student loans held by various lenders. The creditor now holding each student loan is Educational Credit Management Corporation (ECMC). Each debtor filed a plan containing language that provided the debtor would be entitled to the discharge of all or part of the remaining balance owed on the

student loan(s) at the completion of the plan.[1] None of the debtors claim that their loan(s) could have been discharged because of the old "seven year" rule, although each of these cases was filed before October 7, 1998,[2] and thus the only proper way to discharge these student loans, under 11 U.S.C. § 523(a)(8)[3], was for the debtor to prove that the exception of the student loan from discharge would impose an undue hardship.[4]

In each case, the plan was served on the student loan creditor at the post office box addresses provided by the Debtor(s) in the Schedule of Liabilities, as required by § 342(a). The student loan creditors received actual notice of the filing of the bankruptcy, and presumably the plan, since they are mailed to all creditors listed on the matrix. It is clear these creditors received notice because in each case at least one proof of claim was filed by the student loan creditor within two months of confirmation of the plan. ECMC makes no argument that its predecessor failed to timely receive a copy of the plan in any of these cases. However, none of the creditors was served in the fashion required by Fed. R. Bankr.P. 7004(b)(5). That Rule requires service by mail of a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appoint-

ment or by law to receive service of process when the creditor is a corporation.

None of the student loan creditors objected to confirmation of the respective original plans, or in the *Mersmann* and *Nelson* cases, the amended plans, and each of the plans was completed with all debtors receiving a discharge. Furthermore, in the *Boyer* and *Seiwert* cases, the debtors objected to some of the proofs of claim filed by the creditor, and those objections were sustained without response from the creditor, after notice and an opportunity for a hearing. Instead of actively participating at the confirmation stage of each case, the student loan creditors waited until after the debtors had made all the payments required under the confirmed plans and had received a discharge before raising the issue of dischargeability. In each of these cases, therefore, between 4 and 5 years expired after confirmation of the plan before the debtors became aware that their expectations—that their student loans had been partly or fully discharged—were in question.

## II. Procedural Posture

Each of these cases is before the Court in a different procedural posture. In the *Boyer*, *Nelson* and *Mersmann* cases, ECMC has used different methods to at-

---

1. In *Boyer* and *Seiwert*, the plans, authored by the same counsel, provided that only the unpaid original principal on the student loan would survive discharge. In *Nelson* and *Mersmann*, the plans, authored by the same counsel, provided that 10% of the student loan would be paid during the bankruptcy, but upon completion of the plan, the entire remaining balance of the student loan would be discharged.

2. Prior to October 1998, 11 U.S.C. § 523(a)(8) provided for the discharge of student loans if the loan had first become due more than seven years before the date of the filing of the petition *or* if the debtor could demonstrate

that excepting the debt from discharge would impose an undue hardship. The Higher Education Amendments of 1998 eliminated the seven year rule in 1998, after each of these cases was filed. Pub.L. No. 105–244, § 9971, 112 Stat. 1581, 1837 (1998).

3. All future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., unless otherwise specified.

4. *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1257 (10th Cir.1999) (holding that the "debtor unquestionably has the burden of proving undue hardship").

tack the confirmation orders that were entered several years earlier.[5] In *Boyer*, ECMC filed both an adversary proceeding to determine whether the student loan had been discharged and a motion under Fed. R.Civ.P. 60(b)(4) and (6) to amend the order granting discharge. In *Nelson*, ECMC filed an adversary proceeding to determine whether the student loan had been discharged, also pursuant to Fed. R.Civ.P. 60(b)(4) and (6), and in response, Debtor filed a motion to amend the discharge order under Fed.R.Civ.P. 60(a). In *Mersmann*, ECMC filed, in the main case, a Fed.R.Civ.P. 60(b)(4) or (6) motion, requesting the court find that the confirmation orders of the original and amended plans were void, and Debtor responded with a motion to amend the discharge order under Fed.R.Civ.P. 60(a).[6] Finally, in *Seiwert*, it was the Debtor who sought judicial intervention to prevent collection activity by the creditor; she filed an Application for Citation in Contempt.

### III. Standard of Review

Once an order or judgment of the court becomes final, the only remedy available to have it set aside is under Rule 60 of the Federal Rules of Civil Procedure. Rule 9024 of the Federal Rules of Bankruptcy

Procedure makes Rule 60 applicable to bankruptcy cases. ECMC relies on Fed. R.Civ.P. 60(b)(4) or (6), and Nelson and Mersmann on 60(a), to void the particular orders they find offensive. Bankruptcy Rule 9024 provides that "Rule 60 F.R. Civ. P. applies in cases under the Code except that ... (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by ... § 1330." Section 1330(a) allows "a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing" to revoke the order of confirmation "if such order was procured by fraud."

There is no true allegation of fraud in any of these cases, and ECMC would have the burden of proving any fraud by clear and convincing evidence,[7] so ECMC essentially relies on the provisions of Fed. R.Civ.P. 60(b)(4) and (6). These provisions are not subject to the one year limitation set forth in Fed.R.Civ.P. 60(b)(1)-(3). These sections provide that a court may relieve a party from a final judgment, order, or proceeding if "(4) the judgment is void" or for "(6) any other reason justifying relief from the operation of the judgment."

---

**5.** Boyer's plan was confirmed May 20, 1997, and he received his discharge May 17, 2001. Seiwert's plan was confirmed December 19, 1996, and she received her discharge April 2, 2002. Nelson's plan was confirmed May 15, 1998, and on October 29, 1998 as amended, and he received his discharge September 27, 2002. Mersmann's initial plan was confirmed July 15, 1998, and on December 9, 1998 as amended, and she received her discharge June 2, 2003.

**6.** In three of these cases, *Seiwert, Nelson,* and *Mersmann*, there is an additional issue dealing with the contents of a form discharge order, which contradicts the terms of the long-since confirmed plan, and which generically states that the debtor was discharged

from all debts except for "student loan or educational benefit overpayment as specified in 11 U.S.C. Section 523(a)(8)." That issue is discussed, below.

**7.** See *In re J.B. Winchells, Inc.*, 106 B.R. 384, 389 (Bankr.E.D.Pa.1989) (stating that "a motion to vacate an order for fraud in its procurement under Rule 60(b)(3) must be proved by clear and convincing evidence") (citing *Brown v. Pennsylvania R.R. Co.*, 282 F.2d 522 (3rd Cir.1960)). See also *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991) (holding relief under Rule 60(b) is discretionary and is warranted only in exceptional circumstances) *cited in In re TEC Resources, LLC*, 302 B.R. 113 (10th Cir. BAP 2003).

██ Relief under Rule 60(b) is "an extraordinary remedy that allows the court 'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.'"[8] Relief under Rule 60(b) is not available when used to avoid the consequences of a party's decision to forego an appeal.[9] ECMC must establish that it qualifies for Rule 60(b) relief by "clear and convincing evidence."[10]

██ Nelson and Mersmann rely on Fed.R.Civ.P. 60(a) to set aside the conflicting discharge orders in each of their cases, on the basis that the student loan non-discharge language in each order was simply a clerical mistake. Rule 60(a) deals with errors, oversights, omissions and unintended acts or failures that result in a record that does not properly reflect the intention of the parties or the court. In other words, Rule 60(a) exists not to alter a judgment, but rather to make it state accurately what the judgment is. Rule 60(a) may be invoked to make a judgment or order reflect the actual intentions of the court, plus necessary implications. The court thus has much wider latitude under Rule 60(a) motions to insure that its orders do not contain such errors and oversights in this respect than it does under Rule 60(b).[11] Nelson and Mersmann have the burden to show that the language in the discharge orders is such an error or oversight, and that it does not properly reflect the intention of the parties or the court.

## IV. Discussion

This Court does not write on a clean slate in considering the pivotal issues in these cases. In *In re Andersen*,[12] the Tenth Circuit Court of Appeals considered a substantially similar case. Andersen had filed a plan quite similar to those at issue in these cases, proposing to pay ten percent of the debt during the term of the plan, and providing for the discharge of the balance upon completion of the plan. Andersen's plan contained language that confirmation would constitute a finding that excepting the student loan from discharge would impose an undue hardship on the debtor. Conversely, three of the four plans herein simply called for the discharge without any such "finding." The *Mersmann* case, in its amended plan, does contain the "finding."

As with each of the cases currently before the Court, the creditor in *Andersen* had received actual notice of the plan, as demonstrated by its filing an untimely objection to confirmation. A confirmation order had also been entered, judicially adopting the plan, and debtor had completed the plan payments. Finally, in *Andersen*, as here, the debtor had received a discharge before the issue of dischargeability of the student loans was raised several years post-confirmation.

Despite the striking similarity of the facts in these cases to those in *Andersen*, ECMC asks this Court to distinguish that case, essentially on three bases. First, ECMC suggests that in three of these four cases, there is no "finding" of undue hard-

---

**8.** *In re Kieffer–Mickes, Inc.*, 226 B.R. 204, 209 (8th Cir. BAP 1998) (citing *Hoover v. Valley West D M*, 823 F.2d 227, 230 (8th Cir.1987) (quoting *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir.1984))).

**9.** *In re Zirpel*, 53 B.R. 422, 424–25 (Bankr. S.D.1985).

**10.** *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir.1995).

**11.** *In re Bestway Products, Inc.*, 151 B.R. 530, 534 (Bankr.E.D.Cal.1993).

**12.** 179 F.3d 1253 (10th Cir.1999).

ship, and since the debtor has the burden of proof on this issue, any confirmation order that confirms plans without such a finding is in effect void, as it is discharging a debt that § 1328(a)(2) expressly deems nondischargeable. Second, ECMC suggests that as the defendant/student loan creditor in *Andersen*, it did not seriously raise and litigate, on appeal, the issue of whether receipt of a plan, as opposed to receipt of a summons and a complaint filed as an adversary proceeding under Fed. R. Bankr.P. 7001(6),[13] and served under Fed. R. Bankr.P. 7004(b)(3), satisfies due process. In other words, ECMC argues that orders discharging student loans by plan confirmation are void because each debtor was required to file an adversary proceeding to accomplish such discharge. It argues that a creditor has a right to notice, under the due process clause of the Fifth Amendment to the United States Constitution, before its property rights can be cut off, and notice by receipt of a plan is not proper notice. Thus, ECMC argues that because the Tenth Circuit did not squarely confront the issue of due process, it would find, when the issue was properly presented, that these confirmation orders are void for failure of each debtor to prosecute a dischargeability complaint.

Finally, in three of the cases, the generic form discharge order issued at the conclusion of the case squarely conflicts with the terms of the confirmed plan. The form order provides for the blanket non-discharge of student loans, and ECMC grabs onto the language of these orders to provide it relief. ECMC suggests if finality is paramount, as suggested by *Andersen*, then debtors should have appealed those discharge orders. ECMC requests the

Court enforce those orders, instead of the earlier confirmation orders, since they are later final, nonappealable orders.

After a careful reading of *Andersen*, this Court cannot fairly distinguish it from the facts of these cases, and therefore finds that ECMC is precluded from now attacking the confirmation orders in each case.

## A. Debtors' failure to insert magic language regarding undue hardship does not distinguish it from *Andersen*.

■ ECMC first argues that because the plans in *Boyer, Seiwert*, and *Nelson* do not contain magic language, mimicking § 523(a)(8) to the effect that the discharge constitutes a finding that excepting the loans from discharge would create an undue hardship on the debtor and his dependents, this Court should find the debts nondischargeable because there is no judicial determination of hardship. A careful reading of *Andersen*, however, leads this Court to conclude that the Tenth Circuit, or at least the same panel that heard *Andersen*, would find this lack of a "finding" a distinction without a difference. This is because the heart of the Tenth Circuit's opinion is that at least under the facts of that case, the need for finality in confirmed plans is superior to other considerations, including procedural and legal correctness.

The Tenth Circuit noted that while a debtor "unquestionably has the burden of proving undue hardship in order to obtain a discharge," the creditor has the duty to ensure its interests are adequately protected, and cannot sit on its rights and expect the court or the trustee to assume its duty to protect its interests.[14] It further noted

---

13. Fed. R. Bankr.P. 7001 provides that "[t]he following are adversary proceedings: ... (6) a proceeding to determine the dischargeability of a debt."

14. *In re Andersen*, 179 F.3d at 1257.

that "[w]hile Andersen did not properly prove undue hardship pursuant to the requirements of the Code, we agree with the Third Circuit that, 'after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code.' " [15] This language leads this Court to conclude that the predicate language for properly obtaining discharge—undue hardship—was essentially irrelevant to the Tenth Circuit's decision. [16]

It appears that what *was* important to the Tenth Circuit Court of Appeals is that Doreen Andersen had completed her payments over several years and likely had reasonable and settled expectations regarding her future financial planning. The Court held that she had every reason to believe, based on the language of the confirmed plan, that her student loans would no longer be owed. Similarly, the plans in these cases, calling for the partial or full discharge of student loans upon completion of the plan, likely also gave the debtors a reasonable and settled expectation regarding their future financial planning regarding paying these loans. [17]

Thus, even though these plans did not contain the predicate factual allegations necessary to *properly* discharge a student loan, to-wit, proof by debtor of undue hardship, this Court does not believe that the omission of that language would change the outcome, given the Tenth Circuit's analysis. Each of these plans, if timely read by the creditor, would have put the creditor on notice that debtor was attempting to discharge part or all of a student loan that the Code does not permit to be discharged without a finding of undue hardship, and each creditor should have objected to protect its rights.

■ In this case, had the party affected by the improper discharge language in the plan objected, the plan would likely never have been confirmed. In the face of a plan that timely and unambiguously informs a creditor that its claim will be disallowed in full or in part, and its debt discharged under a Chapter 13 plan pending for confirmation, the creditor may not ignore the confirmation process and fail to object, even if it is clear that the objection would prevail because the plan's provisions are improper.

■ Many courts have refused to give preclusive effect to confirmed plans that

15. *Id.* at 1258 (citations omitted).

16. *See In re Poland*, 276 B.R. 660, 664 (D.Kan.2001), *appeal docketed*, No. 02–3020 (10th Cir. Jan. 23, 2002) (holding that "this court cannot find that the lack of an 'undue hardship' finding in Ms. Poland's plan precludes application of the finality principle endorsed in Andersen. Notwithstanding the above passage, the balance of Andersen and its underlying rationale strongly suggest that the same rule of finality would apply to the circumstances of this case").

17. Mr. Boyer only had the expectation, at least from his own plan and the confirmation order, that the remaining principal balance of his student loans would survive bankruptcy. In 2000, when his attorney drafted the incorrect order sustaining the objection to the creditor's first proof of claim, discussed below, but including language that *all* student loan debt was discharged, he may have then acquired the hope that his entire student loan obligation would be discharged. And when the discharge order was entered on May 19, 2001, he may well have believed that order confirmed that his entire student loan obligation was discharged, since it called for the discharge of student loans in those cases where discharge was granted after October 1, 1996. Since his discharge occurred well after October 1, 1996, it had the effect of calling for the entire discharge of his student loans, notwithstanding his confirmed plan only called for discharge any sum not constituting part of the remaining principal.

appear to violate Code provisions, and have used different rationale to do so.[18] But the fact of the matter is that the Tenth Circuit Court of Appeals, whose decisions are binding on this Court, has held that if an order is final, it must be given preclusive effect even if the matter was arguably wrongly decided on the law, or because a different procedure could have been used to determine the issue. That is because it is well settled, at least in this Circuit, that an order need not correctly apply the law to be given preclusive effect.[19]

Accordingly, this Court will enforce each of the confirmation orders, despite the fact the plans improperly call for discharge of debt without proper adjudication of the merits of the undue hardship exception.

**B. ECMC and its predecessors received adequate notice, notwithstanding Debtors' failure to file and appropriately serve an adversary proceeding to determine the dischargeability of the student loan, to conform with the Fifth Amendment requirement of due process.**

ECMC raises a due process argument in these cases, which it contends it did not seriously litigate in *Andersen.* It argues that discharge of its debts, without the debtor first filing an adversary proceeding under Fed. R. Bankr.P. 7001(6), and serving it with a copy of a summons and complaint pursuant to under Fed. R. Bankr.P. 7004(b)(3), is the taking of its property without the due process of law required under the Fifth Amendment.

Although perhaps ECMC did not place as much emphasis on this argument in *Andersen* as it does in each of these cases, this issue was, in fact, raised and decided. Admittedly, the Tenth Circuit chose to address the due process argument in a footnote, rather than in text, but it did, in fact,

---

**18.** *See In re Ramey,* 301 B.R. 534 (Bankr. E.D.Ark.2003) (gathering decisions and outlining various courts' rationales for refusing to give *res judicata* effect to confirmed plans) (citing *Universal American Mortgage v. Bateman,* 331 F.3d 821 (11th Cir.2003) (declining to give *res judicata* effect, which would give debtor a windfall, to plan that modified claim secured solely by residential real estate, in violation of 1322(b)(2)); *Southtrust v. Thomas,* 883 F.2d 991 (11th Cir.1989) (holding that a lien passes through bankruptcy, notwithstanding plan provision not to pay the claim, because no proof of claim was filed and thus failure to use claims objection procedure saved lien); *Simmons v. Savell (In re Simmons),* 765 F.2d 547 (5th Cir.1985) (refusing to give *res judicata* effect to plan that incorrectly provided the creditor had no lien); *Deutchman v. Internal Revenue,* 192 F.3d 457 (4th Cir.1999) (refusing to give *res judicata* effect to a plan treating IRS as unsecured when its claim showed a lien on the proper-

ty); *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995) (refusing to give *res judicata* effect to confirmed plan to which creditor failed to object because debtor did not affirmatively file an adversary proceeding pursuant to 7001(2) and 7004); *In re Escobedo,* 28 F.3d 34, 35 (7th Cir.1994) (refusing to give *res judicata* effect to plan that omitted priority claims)).

**19.** *Underwriters Nat'l Assurance Co. v. N. Carolina Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 714, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); *see also United States v. Tippett,* 975 F.2d 713, 719 (10th Cir.1992) (holding that the "res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.") (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).

consider the same due process argument that ECMC makes here. The Court found that it did

"... not perceive a due process issue here. Rather, we agree with the BAP that, given the fact that [the creditor] does not complain that it lacked adequate notice of Andersen's plan prior to confirmation, 'it appears that due process has been accorded.' " [20]

Similarly, ECMC never asserts that it failed to receive a copy of the plans, the notices of hearing on those plans, or confirmation orders in these cases. It also never asserts it failed to receive the objections to its claims filed in *Boyer* and *Seiwert*, or the orders sustaining those objections.

Instead, ECMC argues that such notice under Fed. R. Bankr.P.2002 is inadequate, relying on the Fourth Circuit decision in *In re Banks*,[21] which was authored by Tenth Circuit Judge Baldock, sitting by designation. The Fourth Circuit, like the Tenth Circuit, held that the Bankruptcy Code and Rules require debtors to bring an adversary proceeding to determine the dischargeability of their student loans.[22] The Fourth Circuit, however, differs with the Tenth Circuit on what result should apply if the debtor fails to do what both circuits agree is required. The Fourth Circuit held that although confirmation orders are "generally [ ] afforded a preclusive effect," it could not "defer to such an order if it would result in a denial of due process in violation of the Fifth Amendment to the United States Constitution." [23]

If it were writing on a clean slate, this Court would hold that where an adversary proceeding is required by the Bankruptcy Rules, as it is when a debtor desires to seek discharge of a student loan, and where the Bankruptcy Code and Rules specify the kind of notice that must be given prior to entry of an order, due process entitles a party to receive that kind of notice before an order binding the party will be afforded preclusive effect. In other words, a potential defendant has the right to expect that the proper procedures will be followed before its property rights are taken.

That said, this Court believes, as noted above, that the Tenth Circuit *has* in fact squarely decided this issue to the contrary, and this Court is obviously bound by that decision.[24] Had the Tenth Circuit not, earlier in its opinion, "assume[d] that student loan debts are presumptively nondischargeable and that the debtor is under an obligation to prove undue hardship by bringing an adversary proceeding," [25] ECMC's attempt to distinguish *Andersen* might be more persuasive.

This Court agrees with Judge Brown, in *In re Poland*, when he notes that while the language of § 523(a)(8) and § 1328(a)(2) show the clear intent of Congress to deny such a discharge, it is the prerogative of the circuit court to interpret the law as it deems appropriate. Thus, although the result herein rewards the attorneys and debtors who improperly sought to discharge student loan debt through the confirmation process, this Court "is obligated to faithfully adhere to that precedent to

---

**20.** *Andersen v. UNIPAC–NEBHELP (In re Andersen),* 179 F.3d 1253, 1257 n. 6 (10th Cir. 1999) (citing the opinion of the Bankruptcy Appellate Panel, 215 B.R. 792, 795 (10th Cir. BAP 1998)).

**21.** 299 F.3d 296 (4th Cir.2002)

**22.** *Id.* at 300.

**23.** *Id.* at 302 (citation omitted.)

**24.** *In re Andersen,* 179 F.3d at 1257 n. 6.

**25.** *Id.* at 1258

the extent it applies to the facts of this case" because "a faithful reading of Andersen requires application of the same rule of finality" in these cases.[26]

Furthermore, if the Tenth Circuit had not expressly agreed with the Third Circuit in *In re Szostek*,[27] that "after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code," ECMC's attempt to distinguish *Andersen* on this due process issue might also be seriously entertained. But the Tenth Circuit, in no uncertain terms, knowing full well that the debtor had violated the Code and the Rule to get there, held ECMC's late attempt to, in essence, set aside a five year old confirmation order was precluded because of the compelling need for finality in confirmed plans.

The Court noted that most courts "enforce offending plan provisions even though acknowledging that a provision may be contrary to the Code," again finding the need for finality to be paramount over whether the final order was legally correct.[28] That is, of course, because in our system of justice, nonprevailing parties have a right of appeal, and any legal errors can be corrected before the order becomes final.

This Court has also examined Tenth Circuit decisions discussing due process outside of the bankruptcy context, to confirm

that the Tenth Circuit would rule, in these cases, that the notice ECMC's predecessors received by receipt of an unfavorable plan, with hearing notice, is adequate to provide due process. Fed. R. Bankr.P. 7004 provides that service may be made on a corporation, which ECMC and its predecessors apparently are, by the methods of service authorized in Fed.R.Civ.P. 4(e)-(j) or by the provisions of Fed. R. Bankr.P. 7004(b)(3). Fed.R.Civ.P. 4(h), which deals with service on corporations, provides that service shall be effected in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and complaint to an officer, etc., of the corporation. Subdivision (e)(1) allows for service to be effectuated "pursuant to the law of the state in which the district court is located, or in which service is effected."

As a preliminary matter, under Kansas law, substantial compliance with requirements for service and awareness of action are all that is necessary.[29] Furthermore, the Tenth Circuit appears to also liberally construe process rules. For example, in *Kitchens v. Bryan County National Bank*,[30] the Court noted that the service of process therein complied with the spirit, if not the letter, of Fed.R.Civ.P. 4, and further noted that "the federal courts generally take a permissive attitude towards the mechanism employed for service of process when defendant actually receives notice."[31]

---

26. *In re Poland*, 276 B.R. at 665–68.

27. 886 F.2d 1405, 1406 (3rd Cir.1989)

28. *In re Andersen*, 179 F.3d at 1258, (quoting *In re Mammel*, 221 B.R. 238, 240 (Bankr. N.D.Iowa 1998)).

29. *Pedi Bares, Inc. v. P & C. Food Markets, Inc.*, 567 F.2d 933, 936 (10th Cir.1977) (citing *Briscoe v. Getto*, 204 Kan. 254, 462 P.2d 127 (1969)).

30. 825 F.2d 248. 255–56 (10th Cir.1987)

31. *Id.* at 255–56 (citing *Nowell v. Nowell*, 384 F.2d 951 (5th Cir.1967)). *See also Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 946 (10th Cir.1987) (upholding service, where the defendant had refused certified mail, by finding the facts established that the defendant had both reasonable notice of the action instituted against him and an opportunity to defend against it). *Cf. Sellens v. Telephone Credit Union*, 189 F.R.D. 461 (D.Kan.1999) (holding that service upon a secretary at defendant's corporate agent substantially complied with Kansas service requirements and

Accordingly, this Court believes the Tenth Circuit would hold that ECMC's predecessors in interest had reasonable notice of the derogatory plan provisions, and a fair opportunity to defend against those provisions. For that reason, this Court does not believe these cases are distinguishable from *Andersen* on the issue of due process and, again, finds it must enforce the confirmation orders.

## C. The terms of the discharge orders in *Seiwert, Nelson* and *Mersmann* do not alter the finality of the confirmation order.

▮ The discharge orders in these three cases provide as follows:

IT IS SO ORDERED THAT:

1. Pursuant to 11 U.S.C. Section 1328(a), the debtor is discharged from all debts provided for by the plan or disallowed under 11 U.S.C. § 502, except any debt:

. . . .

(c) For a student loan or educational benefit overpayment as specified in 11 U.S.C. Section 523(a)(8) in any case in which discharge is granted.

These orders are thus in direct conflict with the earlier confirmed plans, which all call for the discharge of all or part of the student loans at issue.

ECMC, having been on the losing side of the maxim that one cannot collaterally attack a final, nonappealed order in *Andersen*, justifiably makes the same argument in opposition to the debtors' requests to enforce their discharges, notwithstanding the non-discharge language in the discharge orders. ECMC argues that the discharge orders expressly call for the nondischarge of the student loans, that debtors failed to appeal those discharge orders, and, therefore, that they cannot now collaterally attack these orders providing for nondischarge of these debts. This is an issue not directly raised in *Andersen*, because there was no contradictory discharge order in that case.

*Andersen*, once again, provides guidance. The Tenth Circuit in *Andersen*, again, found that the reliability and finality of confirmed plans was paramount in enforcing Andersen's admittedly improper plan provisions, coupled with her admittedly improper procedure (failure to bring an adversary proceeding). That Court also approved the statement in Collier's on Bankruptcy that "[t]here must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order." [32]

▮ This Court has little doubt that the Tenth Circuit would hold, when deciding which of two conflicting orders to enforce, that the confirmation order should control. The form Discharge Order in these three cases was automatically generated [33] by the Clerk of the Bankruptcy Court, without the Court, the trustee, the debtor's attorney, or any other party in interest attempting to tailor it to the actual facts of the case or the terms of the consummated plan.[34] This Court, therefore,

---

was valid service of process when defendant had actual notice of suit).

**32.** *In re Andersen*, 179 F.3d at 1258, *citing* 5 *Collier on Bankruptcy* ¶ 1327.01 (15th ed.1996).

**33.** In 2003, the United States Bankruptcy Court for the District of Kansas issued over

1100 Chapter 13 discharge orders and over 12,000 Chapter 7 discharge orders.

**34.** Frankly, this Discharge Order should state, for clarity sake, that its provisions apply unless another court order provides otherwise. Admittedly, it does not.

holds that if the confirmation order, subject to completion of the plan, provides for the discharge of part or all of the student loan, a later form discharge order cannot revive an already discharged debt.[35] Accordingly, the Court denies ECMC's request to enforce that contradictory, non-tailored discharge order as it relates to the discharge of the instant student loans.

### D. The language in the *Boyer* discharge order buttresses the finality of the confirmation order.

Although ECMC requests that the Court strictly enforce the terms of the generic, form Discharge Order in the prior three cases, ECMC requests this Court refuse to enforce the terms of a similar such order in *Boyer*. The relevant portions of the discharge order in *Boyer*, issued May 17, 2001, provided as follows:

IT IS SO ORDERED THAT:

1. Pursuant to 11 U.S.C. Section 1328(a), the debtor is discharged from all debts provided for by the plan or disallowed under 11 U.S.C. § 502, except any debt:

. . .

(c) for a student loan or educational benefit overpayment as specified in 11 U.S.C. Section 523(a)(8) in any case in which discharge is granted *prior to October 1, 1996*.[36]

As the district judge noted in *In re Poland*, referring to the original bankruptcy court opinion, the October 1, 1996 reference in the order was "archaic" language arising from a prior version of the statute, that the language was likely included by mistake, and that it should have been deleted from the form discharge.[37] Because this discharge was granted after October 1, 1996, this provision would operate to discharge student loans where the discharge occurred in May, 2001.

Boyer, whose plan called only for the discharge of that part of his student loan that did not constitute unpaid principal, obviously argues that the terms of this generic order should overrule the order confirming his own plan, since the confirmation order only called for the discharge of amounts not constituting principal. In other words, Boyer seeks to now discharge even more than he was able to improperly discharge through the plan with the confirmation order.

Furthermore, Boyer objected to the first Proof of Claim filed by the student loan creditor, in February 1998, solely on the basis that documentation for the claim had not been provided. The objection prayed only for disallowance of the claim. Soon

---

35. Judge Nugent recently held that the later discharge order did, in fact, serve to distinguish that case from *Andersen. In re Gable*, —— B.R. —— 2003 WL 21750872 (Bankr. D.Kan.2003). But the facts in *Gable* are different from these facts. A review of *Gable*'s plan shows no unequivocal statement that the rest and remainder of the student loan would be discharged upon completion of the plan. Instead, that plan appeared to only deal with the treatment of the student loan claims during the bankruptcy, including how the claim would be paid. As Judge Nugent correctly noted, "[r]epayment of a *claim* allowed under § 502 is not identical to repayment of a *debt*." *Id.* at ——, 2003 WL 21750872 at *3 (emphasis in original).

36. Doc. No. 73 (emphasis added).

37. 276 B.R. at 666. *Cf., In re Pearson*, 279 B.R. 612 (Bankr.M.D.Ga.2002) (finding that a form discharge order, which had not been changed due to administrative office error in failing to amend discharge order form to reflect Congress' repeal of sunset provision, was void); *In re Tyler*, 285 B.R. 635 (Bankr. W.D.Tx.2002) (finding that failure to recite the current law in a discharge order rendered order void, and Fed.R.Civ.P. 60(b)(4) motion should be granted to student loan creditor).

after the objection was filed on the original claim, the creditor filed a second proof of claim. No objection was ever filed as to that claim. Notwithstanding that fact, when debtor's counsel drafted the order on his objection to the first Proof of Claim, over two years after he filed the objection, he erroneously referenced both proofs of claims. The order also improperly added discharge language, which did not belong in the order disallowing the claim, especially in light of that fact it contradicted the plan language.

The Order stated that "the claims of ECMC, however they may have been listed, are denied, and debtor is granted a discharge as to these claims filed by ECMC." [38] This Order, entered June 14, 2000, was contradictory to the Plan, which called only for the discharge of amounts not constituting principal. Once again, however, ECMC failed to move to reconsider, or to appeal, that erroneous order. Not surprisingly, Boyer now argues that his own improperly drafted Order on Debtor's Objection to Claim somehow overrules the confirmation order, and discharges all "claims filed by ECMC."

As in the *Seiwert, Nelson,* and *Mersmann* cases, this Court holds that it is the confirmation order that should control in light of contradictory orders. Boyer bargained for discharge only of amounts not constituting unpaid principal, and that is the result of which the student loan creditor, by receipt of the plan, was put on notice. The creditor did not object to that treatment, and is now precluded from arguing that amounts other than unpaid principal should not have been discharged. Similarly, Debtor is also precluded from arguing that even unpaid principal amounts should be discharged, given the terms of his own confirmed plan.

Furthermore, ECMC cannot have it both ways. In the other three cases, ECMC argues the Court should strictly enforce the terms of the discharge order, in derogation of the confirmation order, because to do so helps its case. Here, ECMC argues the Court should refuse to strictly enforce the terms of the discharge order, because refusing to enforce the terms of the discharge order helps its case. This scenario, probably better than any other, shows why there needs to be finality, and why the confirmation order should prevail in all four cases. Such result allows the debtor to know, at confirmation, what his or her financial responsibilities will be upon completion of the plan, and allows the debtor to plan his or her financial future. This allows the debtor to know how much of a fresh start he will actually receive if he completes the plan.

Finally, the Court declines to reward debtor for his counsel drafting an order that grants relief in excess not only of what his own confirmed plan provided, but also in excess of the relief prayed for in the actual objection to the creditor's first claim. His objection sought denial of payment of the creditor's first claim. The order, instead, granted denial of both claims ‚*and* a complete discharge of all student loan debt. Again, since this order was in direct conflict with his own plan, it will not be enforced. This holding again reinforces the importance of the finality of the confirmation order.

## V. The appropriate method of attempting to discharge student loans is the filing of an adversary proceeding.

This Court has the independent right and duty to review proposed Chapter 13 plans for compliance with the Code. As this Court has previously noted,

---

38. Doc. No. 62 (emphasis added).

this Court cannot envision a circumstance where including student loan discharge provisions in a chapter 13 plan could constitute a good faith filing.[39] First, Fed. R. Bankr.P. 7001(6) plainly states that an adversary proceeding is required to determine the dischargeability of a debt, and the Court will enforce that provision. The Tenth Circuit in *Andersen* also noted that filing an adversary proceeding was the proper way to seek to discharge a student loan.[40] Second, § 523(a)(8) places the burden on the debtor to satisfy evidentiary elements of undue hardship. Those burdens of proof are improperly shifted by attempting to discharge student loans by the confirmation process, by putting the burden on creditors to object rather than on debtors to prove undue hardship.

 Third, this Court believes that a creditor who is going to potentially lose its favored status under the Code, pursuant to §§ 523(a)(8) and 1328(a)(2), is entitled to receive notice of that potential adverse impact by the service of a summons and complaint, as required by Fed. R. Bankr.P. 7004, instead of by the mere receipt of a plan. Congress has clearly communicated its intent that student loans should not be discharged without the debtor meeting his/her burden to demonstrate that non-discharge would work an undue hardship, and this cannot be done properly in the confirmation process. As the Bankruptcy Court stated in *In re Ruehle,*

> "Proper notice that a student loan is subject to dischargeability arrives with service of a summons and a complaint pursuant to § 523(a)(8). Student loan

creditors have limited reason to take interest in plan confirmation [because the Code mandates non-discharge of student loans under § 1328 and Bankruptcy Procedure requires an adversary proceeding under § 523(a)(8) to change that mandate], but a summons and complaint to determine dischargeability sounds the alarm." [41]

To the extent this Court, in *Luarks,* suggested that it could theoretically be acceptable to discharge a student loan through the confirmation process under certain limited conditions, this Court wishes to again state it cannot presently think of a circumstance where that procedure will be allowed, if it is brought to the Court's attention prior to confirmation. That is because such a plan provision is simply inconsistent with § 1328(a)(2), which expressly excepts the discharge of a student loan, without the debtor first prevailing in a § 523(a)(8) undue hardship adversary proceeding.[42]

## VI. Conclusion

### A. Boyer

The Court finds that the confirmed plan, providing that "[a]ll such [student loans] other than the remaining unpaid original principal amount of the loans remaining unpaid upon completion of the plan will be discharged upon entry of any discharge hereunder," was never appealed by ECMC. Because that order is final, the Court will enforce it, because ECMC has not met its burden, under Fed.R.Civ.P.

---

**39.** *See In re Luarks,* 301 B.R. 352, 360 (Bankr. D.Kan.2003) (stating that if debtors attempt to discharge student loans through plan as long as *Andersen* is the law, any such attempts at discharge should be conspicuous so as to try to accord with due process).

**40.** 179 F.3d at 1258.

**41.** 296 B.R. 146, 157–58 (Bankr.N.D.Ohio 2003).

**42.** *See In re Andersen,* 179 F.3d at 1258 (holding "[w]e may assume that ... debtor is under an obligation to prove undue hardship by bringing an adversary proceeding").

60(b)(4) or (6), to obtain relief from the terms of the confirmation order. To the extent any portion of the "remaining unpaid original principal amount" remains unpaid, that amount has not been discharged, and is subject to collection.

To the extent the terms of the discharge order, which clearly contained archaic language reciting law that was no longer in effect at the time of the discharge, had the effect of discharging more than the confirmation order did, the Court declines to enforce it, under Fed.R.Civ.P. 60(a).

In light of this Court's opinion, the Court denies both ECMC's and Debtor's request for attorney fees and costs.

## B. Seiwert

The Court denies Debtor's Application for Citation in Contempt, because the Stipulation of Facts indicates some unpaid original principal remains due.[43] The confirmed plan in this case provided that "[a]ll such [student loans] other than the remaining unpaid original principal amount of the loans remaining unpaid upon completion of the plan will be discharged upon entry of any discharge hereunder." That plan was confirmed, the order of confirmation was never appealed, and the Court will therefore enforce that order. The "remaining unpaid original principal amount" remains unpaid, that amount has not been discharged, and is subject to collection, along with any post-discharge interest. All other amounts remaining due are discharged, and ECMC is barred from collecting those amounts pursuant to § 524.

In light of this Court's opinion, the Court denies both ECMC's and Debtor's request for attorney fees and costs.

## C. Nelson

The Court denies Plaintiff ECMC's Complaint seeking an order finding that the entire student loan debt not paid through the Chapter 13 can now be collected without violating the stay. The Court finds that the plan, as amended, providing that "[s]uch payment [often percent of student loans], upon completion of plan, will result in discharge of all school loans, including any accrued interest and collection costs" was confirmed and the order of confirmation was never appealed. That order is final, having never been appealed, and the Court will enforce that order. Again, ECMC has not met its high burden under Rule 60(b). Because the discharge order conflicts with the terms of the confirmation order, which was prior in time, the Court will not enforce that conflicting order, under Rule 60(a). Debtor is discharged from repaying any amount of the student loans at issue, and the creditor is prohibited from continuing any action to collect or recover such debt, pursuant to § 524.

The Court grants Debtor's Counterclaim, finding that the educational loans were discharged by the terms of the confirmation orders, coupled with the completion of the plan.

The Court denies ECMC's request for attorney fees and expenses, since it is not a prevailing party. Debtor also requested attorney fees and costs, but did not provide a statutory basis for those fees and costs. This Court believes it would be inequitable to grant attorney fees and costs in these cases. Although the Court has found that the student loan debt herein should be discharged, and that the plan was clear on that point, the discharge order in this case unequivocally states the

---

43. The January 1997 proof of claim showed $26,259 principal due, and the lender received $22,000 during the course of the Plan.

*See* Doc. No. 93, Stipulations of Fact Nos. 7 and 13.

opposite. That conflict in the Court's own two orders would have caused confusion to any party. For this reason, attorney fees and costs will also be denied to Debtor. That Debtor could have avoided the need for this litigation by simply moving to reconsider, or appealing, the discharge order, is another basis for denying a fee and cost award.

**D. Mersmann**

The Court denies Plaintiff ECMC's Motion seeking an order, under Fed.R.Civ.P. 60(b)(4) and (6) finding that the entire student loan debt not paid through the Chapter 13 can now be collected without violating any stay. The Court finds that the plan, as amended, provided that "Upon completion of plan and payment of said 10% of allowed general, unsecured creditors, all remaining unsecured debts, including school loans that are otherwise non-dischargeable in chapter 7 cases, shall be discharged. Such completion of the plan shall result in a finding that it would be an undue hardship for the Debtor to have to pay any additional monies to the special class of school loans not otherwise dischargeable." This amended plan was confirmed and the order of confirmation was never appealed. Again, ECMC has not met is burden under Rule 60(b). That order is final, and the Court will enforce that order. Debtor is discharged from repaying any amount of the student loans at issue, and the creditor is prohibited from continuing any action to collect or recover such debt, pursuant to § 524.

The Court grants Debtor's Motion for Amendment of Discharge Order Pursuant to Fed.R.Civ.P. 60(a), because, as noted above, it contradicts the prior confirmation order, and should not have been entered in this form.

The Court denies ECMC's request for attorney fees and expenses, since it is not a prevailing party. Debtor also requested attorney fees and costs, but did not provide a statutory basis for those fees and costs. The Court denies this request for the reasons stated above in relation to the *Nelson* case.